DIRK S. LANDSTRA, PLAINTIFF IN ERROR, v. LILLIAN B. BUNN, DEFENDANT IN ERROR.

Submitted March 27, 1911—Decided June 19, 1911.

1. Where persons contract with each other regarding what shall be their course of conduct with each other concerning a certain subject-matter, and declare that there shall be no change in their agreement which shall visit additional liability in favor of or against the other, without authority for so doing, in writing, the mere performance of extra service without such written authority will not give rise to an implied waiver of provisions of the contract in that respect.

2. When parties have by contract provided that certain rights shall accrue to or be withheld from them or either of them, as between themselves, upon the making of a certificate by an architect as a condition precedent, such certificate is conclusive as to the facts so certified, which lie within the scope of the agreement, unless there be proof of fraud in the giving or withholding of such certificate.

On error to Essex Circuit Court.

For the plaintiff in error, *Riker & Riker.*

For the defendant in error, *Robert D. Reynolds.*

The opinion of the court was delivered by

VOORHEES, J.   Arising out of a written contract for the erection of a dwelling-house, a suit was brought by Landstra, the contractor, against Bunn, the builder and owner, the object of which was to recover damages for being prevented from completing the contract by the alleged unlawful discharge of the plaintiff, and also for a recovery for extra work and labor bestowed upon the building.   The trial resulted in a nonsuit, and the propriety of that judicial action comes under scrutiny by means of this writ of error.

Considering first the claim for extra work, which the testimony showed had been performed solely upon the verbal order of the defendant, no written order having been given either by

the owner or architect, we have concluded that the nonsuit was correct on this phase of the case.

The contract, after stating "that the work included in this contract is to be done under the direction of the said architects," also contained the following provision: "Article 3. No alterations shall be made in the work except upon the written order of the architects; the amount to be paid by the owner or allowed by the contractor by virtue of such alterations, to be stated in said order, should the owner and contractor not agree as to the amount to be paid or allowed, the work shall go on *under the order required above,* and in case of failure to agree, the determination of said amount shall be referred to arbitration," &c. The specifications attached to and made a part of the contract contained a similar provision, as follows: "Should the owner at any time desire any variations in the work as planned and specified, or any additional work, the contractor shall execute such variations or extra work only on the written order of the architects, specifically stating the character of the variations or extra work and the prices thereof. The architects will not audit or recognize any bills for extra work not so ordered by them in writing," &c.

The plaintiff argues that the extra work having been verbally ordered and actually done, it was properly chargeable against the owner, who, in order to escape payment for it, should have been required to establish to the satisfaction of the jury that the work had not been done on his order and that he had not waived the requirements of the contract. It may be conceded that parties to a contract are at liberty subsequently to contract differently in variation of the original contract. But that question is not here involved. Where persons contract with each other, regarding what shall be their course of conduct with each other concerning a certain subject-matter, and declare that there shall be no change in their agreement which shall visit additional liability in favor of or against the other without authority for so doing, in writing, the mere performance of extra service without such written authority will not give rise to an implied waiver of provisions of the contract in that respect.

While the acceptance of a benefit usually raises an implied promise to pay for it, yet there are instances where such inference will not arise, a notable one being the rendition and acceptance of services by members of a household to each other. *Disbrow* v. *Durand,* 25 *Vroom* 343. So, in the case in hand, without proof of alteration in the contract by the parties, or express proof of waiver of its terms, the plaintiff, in order to recover, was bound to produce the order of the architects stipulated for in the agreement.

The ordering of the extra work by the defendant without written order must not be construed as evincing an intention to alter or vary the contract; but rather that such action was to be taken in conformity with its terms.

This court, in *Sheyer* v. *Pinkerton Construction Co.,* 59 *Atl. Rep.* 462, where the effect of similar provisions was passed upon, speaking by Mr. Justice Reed, said: "But it is clear that without such order, or a waiver of the stipulation requiring it, or proof that the plaintiff had been fraudulently lured into doing the work without it, there could be no recovery for the cost of the alteration." *Abbot* v. *Gatch,* 13 *Md.* 314.

This brings us to the second point made by the plaintiff, against the nonsuit, involving his claim for loss of profits, based upon the wrongful interference by the defendant with the plaintiff in the performance of the contract.

The proofs show that the defendant notified the plaintiff in writing that the architects had certified that the plaintiff had neglected and failed to prosecute the work with promptness and diligence, and that after three days from the service of the notice the defendant would proceed to provide labor and materials necessary to complete the work, and would deduct the cost thereof from any money due, or to become due under the contract; and further, that if the architects shall certify that such neglect and failure is sufficient ground for such action, the defendant would, after said three days, terminate the contractor's employment, and enter upon the premises and take possession in order to complete the work and would employ some other person or persons to finish it.

Article 5 of the contract upon which this notice was formulated reads as follows: "Should the contractor at any time refuse or neglect to supply sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, *such refusal, neglect or failure being certified by the architects,* the owner shall be at liberty, after three days' written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract; and if the architects shall certify that such refusal, neglect or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work and to enter upon the premises and take possession, for the purpose of completing the work included under this contract, of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor, he shall not be entitled to receive any further payment under this contract until the work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor; but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner, as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architects, whose certificate thereof shall be conclusive upon the parties."

The question whether the architects' certificate of the alleged neglect or failure was conclusive as evidence between the parties in the absence of fraud, or whether the truth of the matter thus certified might be inquired into, is the one for solution.

The plaintiff does not dispute the fact that by their agreement the parties selected the architects to direct the work, but

that they failed to stipulate that their decision should be a finality. He also insists that before the architects could exercise any function under this article, the fact of default must first be established, or to put it differently, the fact of default not having been made to appear otherwise than by the certificate, the existence of such default was a matter essential to be proved, as a condition precedent to the issuing of a certificate by the architects, hence a jury question arose, and the nonsuit was improper.

When parties have by contract provided that certain rights shall accrue to or be withheld from them, or either of them, as between themselves, upon the making of a certificate by an architect, as a condition precedent such certificate is conclusive, as to the facts so certified, which lie within the scope of the agreement. To doubt this proposition would be to fly in the teeth of a long line of our cases: *Byrne* v. *Sisters of St. Elizabeth,* 16 *Vroom* 213; *Chism* v. *Schipper,* 22 *Id.* 1; *Bernz* v. *Marcus Sayre Co.,* 7 *Dick. Ch. Rep.* 275; *Sheyer* v. *Pinkerton Construction Co., supra; Mackinson* v. *Conlon,* 26 *Vroom* 564; *Bradner* v. *Roffsell,* 28 *Id.* 412.

To overcome this effect of the certificate there must be proof of fraud in its giving or withholding. We have no such proof in the case in hand.

The terms of the contract made it the defendant's right to give the three days' notice upon the certification by the architects of "the refusal, neglect or failure."

It is clear that this provision was made for the benefit and protection of the owner. In matters about which the owner may be, and usually is, ignorant and unskilled, it substituted the technical and professional knowledge of the architects. It plainly means that it shall be final, although not so stated in words. To hold otherwise would be to strip the certificate of any force, leaving its form to entrap the owner by inducing action upon it.

The plaintiff, moreover, asserts that inasmuch as it appeared that the contract could have been finished within the limited time, it must be deemed that there was no actual neglect or refusal on his part, and hence the certificate is not honest. It

was to decide just such disputes as this that parties give power to architects to certify. The certificate must speak as of the time when it was given. That proof afterwards be forthcoming to show the possibility of finishing within the time allotted should not countervail the propriety and truthfulness of the certificate, viewed as of its date, with reference to their possible delays and likely contingencies in prudence to be anticipated. Proof of fraud should not be rested upon mere divergent statements of facts, made by the arbiter in his certificate and by the party against whom it issues.

The judgment of the Circuit Court will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, CONGDON, SULLIVAN, JJ. 13.

*For reversal*—None.