31 N.J. Super. 454 (1954)
107 A.2d 18
LEWIS KOPPELMAN AND MARY KOPPELMAN, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
RARITAN HOMES, INC., A CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 21, 1954.
Decided July 14, 1954.
*456 Before Judges EASTWOOD, FRANCIS and FREUND.
Mr. Samuel A. Larner argued the cause for the plaintiffs-appellants (Mr. Robert Scherling, attorney).
Mr. John E. Toolan argued the cause for the defendant-respondent (Messrs. Toolan, Haney & Romond, attorneys).
The opinion of the court was delivered by FREUND, J.A.D. (temporarily assigned).
The plaintiffs, Lewis Koppelman and Mary Koppelman, his wife, appeal from a final judgment for the defendant, Raritan Homes, Inc., entered at the conclusion of the trial of the case, without submission to the jury.
The action was predicated upon the alleged breach of a written contract entered into in October, 1949, whereby the plaintiffs agreed to purchase from the defendant for the sum of $8,500 a plot of land and a house to be constructed thereon by the defendant. The contract provided, inter alia, that issuance by the Veterans Administration of a "Final Compliance Inspection Report" would be final and conclusive upon both parties. Such compliance report was issued on January 10, 1950, title closed on January 12, 1950, and the plaintiffs went into possession of the property, although they allege the house was not then completed. Some months later they filed a complaint, alleging that the house had not been constructed in accordance with the plans and specifications filed with the Veterans Administration. The defendant set up as a defense the issuance of the Final Compliance report, but the plaintiffs replied that it had been issued in bad faith and as a result of fraud.
No useful purpose would be served by itemizing the admitted deviations in construction from the specifications furnished to the Veterans Administration. Suffice it to say that the plaintiffs' proofs consisted solely of their own testimony and that of one Harold Hansen who stated his business was "valuation work." He is neither an architect nor an engineer. The defendant, on the contrary, introduced ample *457 proof by a number of competent witnesses that the deviations were either equivalent or superior to the requirements of the specifications, and it was definitely established that the inspectors of the Veterans Administration which was operating under Federal Housing Administration regulations were authorized to approve deviations, if equivalent or superior to the specified requirements.
Both parties rely on Carlson v. Len Home Builders, Inc., 132 N.J. Eq. 38 (Ch. 1942), wherein the plaintiff sought to compel specific performance of a contract to convey real estate. The court held "* * * complainants are barred from a recovery by the provision in the original agreement of sale to the effect that a certificate of lending authority of compliance with the specifications and approval of the loan should be conclusive as to the carrying out of the contract." Here, the appellants argue that in the Carlson case the certificate of the lending authority was conclusive as to the performance of the entire contract and that in the instant case the contract contains no such provision. Clearly, it was the expressed intention of the parties that the issuance of the Final Compliance Inspection Report be final and conclusive. No misunderstanding in language appears, even though the intention of the parties may not have been spelled out with the minuteness found in the Carlson case, supra. Jose Naples, Inc. v. Great Notch, etc., Co., 8 N.J. Misc. 135 (Sup. Ct. 1930). Corbin on Contracts, Vol. 3, § 652, p. 598. Annotations, 54 A.L.R. 1255, 110 A.L.R. 137.
Although the trial court denied the defendant's motion for judgment at the close of the plaintiffs' case, apparently for the reason that the Final Compliance Inspection Report had not then been introducel in evidence at the trial, it is clear from the pretrial order that the report had been received and marked in evidence at the pretrial conference. The plaintiffs argue that the compliance report was the "result of dishonesty or palpable mistake" and charge fraud.
In T. Foster Callahan, Inc. v. Commissioners, etc., Union Twp., 102 N.J.L. 705 (E. & A. 1926), the plaintiff charged *458 the engineer with "willfully, fraudulently, deliberately, arbitrarily, and in bad faith refusing to certify * * *." It had been expressly stipulated that the engineer's determination should be final and conclusive. On appeal, the Court of Errors and Appeals held unanimously that "The parties having agreed to make the engineer the arbiter, the question as to the quality and quantity of work performed and compensation due, could not be transferred to the consideration of the jury, unless there be proof of fraud, and whether there was any evidence of fraud is a question of law."
Parties to a contract may agree that if differences arise under the terms of the contract a party, not a party to the contract, may resolve a dispute and such decision is final and conclusive unless it can be proved that fraud or dishonesty existed on the part of the arbiter. Landstra v. Bunn, 81 N.J.L. 680 (E. & A. 1911); Mundy v. Louisville & N.R. Co., 67 F. 633 (C.C.A. 6 1895). "The law presumes that business transactions are honest. In other words, fraud is never presumed, and where a party to the transaction alleges its existence the burden rests upon him of proving the truth of his allegations." Guerber Engineering Co. v. Stafford, 96 N.J.L. 280 (E. & A. 1921).
In the instant case, the plaintiffs failed to prove dishonesty, gross mistake or fraud in the inspector's issuance of the compliance report. Indeed, the record is quite devoid of any evidence in such respect. Furthermore, the report is dated January 10, 1950, the plaintiffs took title on January 12, 1950, executing the requisite bond and mortgage, and entered into possession  all without raising any question as to the authenticity of the compliance report or as to the uncompleted items of construction. It seems to us that had the building been in such a state of noncompletion as they later alleged, a prudent person would have, before closing title, exacted from the defendant a written commitment that the unfinished items would be completed, and within a specified period of time. Lawrence v. Tandy & Allen, Inc., 14 N.J. 1 (1953). Additionally, a licensed architect testified *459 for the defendant, without denial, that he had heard Mr. Koppelman say, in the presence of several persons, that he would take $12,000 for the premises. To us, that statement does not connote dissatisfaction with an $8,500 purchase.
In our opinion, on the basis of the plaintiffs' conduct, their contentions are without merit. The judgment for the defendant is affirmed.