## KELLY v. PUBLIC SCHOOLS OF MUSKEGON.[1]

1. BUILDING CONTRACT—PLANS AND SPECIFICATIONS—DISCREPAN-
CIES—DECISION OF ARCHITECT.

> A provision in a building contract that, if any apparent dis-
> crepancy should be found to exist between the plans, working
> drawings, and specifications, the decision as to the fair con-
> struction and the true intent and meaning thereof should be
> made by the architects, whose decision should be binding, is
> reasonable, and binds both parties; especially where the
> plans and specifications, an examination of which would have
> revealed apparent discrepancies, were accessible to the parties
> before the contract was made.

2. SAME—FINALITY OF DECISION—EVIDENCE OF FRAUD.

> A finding that the decision of the architects against the
> right of the contractor to extra compensation was fraudulent
> cannot be based upon the mere fact that they drew the plans
> and specifications, and were to receive from the owner as
> their compensation a cetain per cent. of the total cost of the
> building.

Error to Muskegon; Russell, J. Submitted June 11,
1896. Decided July 31, 1896.

*Assumpsit* by William D. Kelly, assignee of Joseph
D. Boland, against the Public Schools of the City of
Muskegon, upon a contract for the erection of a high-school
building. From a judgment for defendant on verdict
directed by the court, plaintiff brings error. Affirmed.

*Arthur Jones*, for appellant.

*Smith, Nims, Hoyt & Erwin*, for appellee.

MOORE, J. The plaintiff is the assignee of Joseph D.
Boland, and as such brought suit. Mr. Boland was the

[1] Rehearing denied December 9, 1896.
110 MICH.—34.

contractor for the erection of a high-school building in the city of Muskegon, under a written contract, dated July 6, 1892, which required him to perform all the work and provide all the materials for the erection and completion of the school building; the whole of said work to be performed, and all the materials to be furnished, in conformity with the plans and specifications of the same, as made by Patton & Fisher, of Chicago, Ill., the architects appointed by the party of the second part. The contract provided that, on the fifteenth and last days of each month, payment should be made on the estimate of the architects, or person appointed by them for that purpose. It also contained the following provisions:

"*Sixth.* The said party of the first part shall, during the progress of the work, apply to the said architects, or the superintendent in charge of the work, for all needful explanation of the true intent and meaning of the said plans and specifications; that a working plan shall, at the expense of said second party, be furnished to the party of the first part, if required, it being expressly understood that all work described or referred to in the specifications is to be executed by said party of the first part, whether or not the said work is illustrated by the aforesaid plans or working drawings, and that all work shown by the plans and working drawings is to be executed by said party of the first part, whether or not said work is described or referred to in the said specifications; and if any apparent discrepancy shall be found to exist between the plans, working drawings, and specifications, the decision as to the fair construction, and of the true intent and meaning, of the plans, working drawings, and specifications, shall be made by the said architects, whose decision shall be binding in that regard upon the parties hereto.

"*Seventh.* That any discrepancy or variance between this contract and the specifications hereinbefore referred to shall be interpreted and rendered in accordance with the requirements and stipulations of said specifications."

When the plans and specifications were originally made, they provided for but three chimney stacks that should

go through the roof, and two chimney ventilating stacks, running from the basement, and stopping at the third floor. Before the contract was let, the plans and specifications were returned to the architects, with instructions to change them so as to provide for the extension of the two ventilating chimney stacks through the roof. The architects undertook to make these changes, and did make them in some of the plans and in some of the specifications, but failed to make detailed changes in all the specifications. These plans and specifications were returned to the board about April 13th, and were consulted by Mr. Boland before he made his bid, which was made May 2, 1892. The contract was let to him May 3d. It was drawn later, and signed July 6th. When Mr. Boland, in his work of erecting the building, reached the third or assembly floor, he stopped work on the two chimney ventilating stacks, which he had erected from the basement to that place, because, as he read his contract, it did not call for the erecting of those stacks higher than that point. When the superintendent ascertained that Mr. Boland was not intending to erect the stacks higher than the third floor, he called the attention of the chairman of the building committee to it, and explained to him what Mr. Boland claimed with reference to the stacks. The chairman then examined the specifications and plans with the superintendent, and his attention was particularly called by the superintendent to the specifications, which called only for three chimneys to go above the roof, the other two to stop at the floor of the assembly room. The chairman said to the superintendent that these two chimneys must be built up, and, if there was any question as to the responsibility of the school board in the matter, he would report it at the next meeting of the board. The superintendent insisted that the chairman should go to the building and examine into the matter himself. He did so, and decided that it would not be practicable, with the experience they had had, to leave the flues in that shape. A school building in the

city had formerly burned from that cause, and he insisted that such a thing should not happen again, and decided to carry the flues to the roof, and stated to Mr. Boland and the superintendent that the matter in controversy must be settled by the full board. The chairman testified that at that conversation at the high school building, just referred to, he stated and understood that the intention of the plans and specifications was to stop these stacks at the third floor, but that he protested against it, and would not have it that way, and ordered them built up. Accordingly, Mr. Boland went on with the work, and, in due course of time, finished the building and topped out these two chimney stacks. The matter was submitted to the architects whether he should receive extra compensation for that work, and they decided that he should not. The defendant corporation declined to pay for the labor and materials expended in the topping out of these two stacks; claiming that the contract made the architects the arbiters in the matter, and their decision protected the defendant. Mr. Boland assigned his claim to the plaintiff, who, after the building was completed and accepted, brought suit; and, on the trial of the case before a jury, the circuit judge directed a verdict for the defendant, on the ground that the decision of the architects was binding upon both parties and final.

There are a good many assignments of error made by the plaintiff, but, in our view of the case, it is not necessary to discuss many of them, as the issues involved are questions of law, and grow out of the construction of the contract. After a careful consideration of this contract, we can reach no other conclusion than that it falls within the case of *Guthat* v. *Gow*, 95 Mich. 527, and should be governed by it. The plans and specifications were accessible to, and examined by, Mr. Boland, before he made his contract. An examination of them would show there were apparent discrepancies in them. With that condition of things existing, Mr. Boland signed a contract containing the following provision:

"That if any apparent discrepancy shall be found to exist between the plans, working drawings, and specifications, the decision as to the fair construction, and of the true intent and meaning, of the plans, working drawings, and specifications, shall be made by the said architects, whose decision shall be binding in that regard upon the parties hereto."

This seems like a reasonable provision, and we think both parties are bound by it.

The circuit judge was requested to charge the jury, in effect, that, if the architects were guilty of fraud in making their decision, it would not be binding upon Mr. Boland or his assignee. The circuit judge refused to give this charge, and counsel for plaintiff makes a learned and exhaustive brief upon the error assigned to the refusal of the court to charge as requested, calling our attention to many decisions. The trouble with the argument is, there is no testimony to base it upon. Unless the fact that the architects drew the plans and specifications, and were to receive as their compensation 5 per cent. of the total cost of the building, will warrant an inference of fraud in their decision, there is nothing in the record to indicate but that their decision was made in the utmost good faith. We are not prepared to draw any such conclusion.

Judgment is affirmed.

The other Justices concurred.