Eugene L. **LANE** d/b/a **Commercial Construction Co.,** Appellee,

v.

**GEIGER–BERGER ASSOCIATES, P.C.,** Appellant.

**No. 79–1216.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1979.

Decided Nov. 9, 1979.

John H. Altergott, Jr., Shughart, Thomason & Kilroy, Kansas City, Mo. (argued), James W. McManus, and Stuart E. Bodker, Kansas City, Mo., on brief, for appellant.

Paul Scott Kelly, Jr., Gage & Tucker, Kansas City, Mo. (argued), and Michael J. Gallagher, Kansas City, Mo., on brief, for appellee.

Before BRIGHT and HENLEY, Circuit Judges, and REGAN, Senior District Judge.*

REGAN, District Judge.

In this diversity action a jury found Geiger-Berger Associates, Inc., P.C. liable on plaintiff's third party claim for indemnity. By this appeal from the resultant judgment, reversal is sought on the basis of asserted trial errors.

The controversy stems from the construction of the Hammond Center (the multipurpose recreation building) at the Southwest Missouri State University in Springfield, Missouri, for which B. B. Andersen Company, Inc. was general contractor. The structural plans and drawings for the building had been prepared by Geiger-Berger, a structural engineering firm. Eugene L. Lane entered into a subcontract with Andersen for the performance of certain fill and excavation and related work called for by Geiger-Berger's plans and specifications. Lane's contract, although dated January 27, 1975, was actually executed by him after February 5, 1975.

After Lane had completed a substantial amount of work, a dispute arose between Lane and Andersen concerning the extent of soil excavation and the kind of fill material required to bring the project site up to finish grade. Lane contended that the entire site had to be excavated to a minimum depth of seven feet and that the fill material was to be "crushed rock sub-base material" which had been excluded from his contract. On the other hand, it was Andersen's position that only the excavation to insert the footings was required and (more importantly) that on-site clay material was suitable for use as fill. The use of the clay fill material would have greatly increased Lane's costs. This contractual dispute was submitted by Andersen to the project architect for his interpretation of the pertinent drawings and specifications. The contract contained a provision to the effect that the decision of the architect "as to the true construction and meaning of the drawings and specifications shall be final."

On July 1, 1975, the project architect issued his interpretation sustaining Andersen's contentions, following which Andersen demanded that Lane complete the contract by utilizing the clay material as fill. Upon Lane's refusal to do so, insisting that his contract made no such requirement, Andersen terminated the subcontract and expended a large sum (allegedly approximately $240,000) to complete the job. Lane subsequently filed suit against Andersen seeking to recover amounts allegedly owing under his subcontract and for damages. Andersen counterclaimed for his expenditures in completing Lane's subcontract. Lane then filed a third party claim against Geiger-Berger for indemnity. Prior to trial, Lane settled the Andersen claim. Before finalizing the settlement, Lane submitted it to Geiger-Berger for approval, tendering it the defense of the claim in the event the settlement was disapproved. However, Geiger-Berger refused either to approve or disapprove the settlement or to assume Lane's defense. Lane then settled the claim for $73,500.

During the trial of this action, the parties stipulated that Lane had a potential liability to Andersen with a maximum exposure of $240,000 and that the settlement of that potential liability for $73,500 was reasonable as between Lane and Andersen. It was further stipulated that Lane's expenditure for attorneys' fees and expenses in the Andersen litigation was fair, just and reasonable. Hence, the issue of Geiger-Berger's liability having been found for Lane, the jury awarded him (by direction of the Court, not excepted to) the sum of $99,-146.97.

The thrust of Lane's claim for indemnity is that the obligation under his subcontract to pay the increased cost resulting from the use of clay material as fill was proximately caused by the negligence of Geiger-Berger

* The Honorable John K. Regan, United States Senior District Judge for the Eastern District of Missouri, sitting by designation.

in preparing the structural plans and drawings or by its February 5, 1975 affirmative oral misrepresentations (on which Lane relied in entering into the contract) that crushed rock fill (which he had excluded from the subcontract) was required. Verdict-directing instructions were given on both theories.

## I

This appeal does not bring into question Lane's right under Missouri law to indemnity from Geiger-Berger. The principal assignment of error relates to the damage instruction which directed the jury to award Lane $99,146.97 if the jury found for him on the issue of liability. This claim of error, raised for the first time on appeal, is premised on the contention that under "current" Missouri law governing allegedly comparable situations (*Missouri Pacific Railroad Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. en banc 1978) an "all or nothing" damage instruction is improper, and that in lieu thereof the jury should have been instructed to apportion the damages between Lane and Geiger-Berger on the basis of their relative responsibility for such damages.

Rule 51 Federal Rules of Civil Procedure explicitly provides that "(n)o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict." Admittedly, Geiger-Berger made no objection at all in the district court to the giving of the "all or nothing" damage instruction, nor did it proffer or request any instruction on apportionment of damages. In this situation, to avoid the reach of Rule 51, Geiger-Berger invokes the "plain error" doctrine, arguing that this alleged "error" unjustly affected its substantial rights, in that by precluding the jury from apportioning the damages, the instruction "forced the jury to place the entire burden of Andersen's expenses on one of two parties."

We find no error, much less "plain error," in the damage instruction. *Whitehead & Kales* has no application to the facts of this case. What *Whitehead & Kales* held was

merely that where two concurrent or joint tortfeasors are liable to a third party for the damages sustained by said party, a jury should, as between the tortfeasors, determine their relative fault as a predicate to apportioning their liability for such damages, and this is so without regard to labels such as "active-passive" negligence.

It is simply not true that Lane and Geiger-Berger were joint tortfeasors. Andersen had no tort claim against Lane. It sued him for breach of contract, for which Lane alone could be held liable to it. Andersen had no claim at all against Geiger-Berger, and certainly none based on Lane's breach of contract. And since Lane and Geiger-Berger were not joint tortfeasors, nothing in *Whitehead & Kales* either authorizes or mandates an apportionment between them of the damages sustained by Andersen on the basis of their relative fault. We add that nothing in the pleadings or in the pre-trial order raises any issue as to apportionment of damages.

## II

The only instruction which was objected to in the district court is to the effect that the decision of the architect was final and binding on Lane under the facts. As we have noted, the contract between Lane and Andersen specifically provided that the "[architect's] decision as to the true construction and meaning of the drawings and specifications shall be final." The instruction is a correct statement of the applicable law. See 17A C.J.S. Contracts § 326, page 253; *Benjamin Foster Co. v. Commonwealth*, 318 Mass. 190, 61 N.E.2d 147, 151 (1945); *John W. Johnson, Inc. v. J. A. Jones Construction Co.*, 369 F.Supp. 484 (D.C.Va. 1973); *Kelly v. Muskegon Public Schools*, 110 Mich. 529, 68 N.W. 282 (1896); *Norcross v. Wyman*, 187 Mass. 25, 72 N.E. 347 (1904). Cf. *Public Water Supply District No. 8 of Jefferson County v. Maryland Casualty Company*, 478 S.W.2d 293 (Mo.1972); *Massman Construction Company v. Lake Lotawana Association, Inc.*, 240 Mo.App. 469, 210 S.W.2d 398, 402 (1948).

Geiger-Berger does not contend to the contrary. It argues, without supporting authority, that the instruction (which did not direct a verdict) somehow deprived Geiger-Berger of the opportunity to show that Lane had three options to "challenge" the architect's decision, namely, by seeking a change order, an arbitration, or a declaratory judgment. As correctly pointed out in *John W. Johnson, Inc. v. J. A. Jones Construction Co.*, 369 F.Supp. at 489, if resort could be had to arbitration with respect to the architect's decision as to the true construction and meaning of the plans and specifications, then the provision that such decision is "final" is reduced to a nullity. This is equally true as to a declaratory judgment. And seeking a "change order" obviously does not "challenge" the finality of the architect's decision. We find no prejudice to Geiger-Berger's substantial rights in the giving of the instruction.

### III

■■■ Appellant's assignments of error which relate to the alleged exclusion of competent evidence are wholly lacking in merit. Of these in order. (1) Geiger-Berger complains of the rejection of an offer of proof that prior to the termination of the Lane subcontract, Lane presented a request to Andersen based on 55 per cent completion, although in the opinion of the witness (based on the premise that Andersen's interpretation of the contract was correct) Lane had completed only 35 per cent of the work. As the district court noted, this proffered testimony raised a collateral issue, pertinent only to the original Andersen lawsuit, which was not included in the pre-trial order. (2) On the issue of Lane's reliance on Geiger-Berger's misrepresentations, Geiger-Berger sought to introduce the affirmative answer of Lane's bonding company to an interrogatory inquiring (in a separate suit which was dismissed prior to the trial) whether Lane had entered into his subcontract on January 27, 1975. There was ample evidence, the truth of which was for the jury's resolution, that although the contract and bond contained the typed date of January 27, the contract was not actually received by Lane until February and was not executed by him until after the misrepresentations were made on February 5, 1975. The hearsay "admission" of the bonding company was properly rejected. (3) Next, it is contended that "the excluded evidence" was relevant on the issue of "relative fault" under *Whitehead & Kales*, supra. The point is not developed and we are not informed as to what "excluded" evidence is referred to. In any event, *Whitehead & Kales* is inapplicable. (4) Finally, it is argued that "the excluded evidence" was relevant on the issue of Lane's credibility. Again, the matter is not developed. With respect to this point, we are referred only to a transcript page at which the district court, after hearing an offer of proof, ruled that defendant could introduce the evidence. And the record shows that the proffered evidence was in fact subsequently admitted.

### IV

Error is also assigned to the giving of a verdict-directing instruction on the issue of misrepresentations by Geiger-Berger. No objection to this instruction having been made in the district court, we are urged to consider the merits of this claim under the "plain error" doctrine.

On the premise that the complaint fails to allege all of the elements necessary to sustain a fraud claim in Missouri or to "specifically allege the circumstances constituting the supposed fraud," appellant argues that it was "plain error" to submit this issue. We do not agree. In the pre-trial order, the parties stipulated as to the issues to be litigated. Included therein were all of the elements which the Missouri Supreme Court en banc (*Latta v. Robinson Erection Co.*, 363 Mo. 47, 248 S.W.2d 569) holds must be proved for a recovery based on misrepresentations.

■■■ It is well settled that the pre-trial order supersedes the pleadings and establishes the issues to be considered at trial. See Wright & Miller, Federal Practice and Procedure: Civil § 1522; *Nat G. Harrison*

*Overseas Corporation v. American Tug Titan*, 516 F.2d 89, 95–96 (5th Cir. 1975); *American Surety Company of New York v. Williford*, 243 F.2d 494 (8th Cir. 1957); *Stafos v. Missouri Pacific Railroad Company*, 367 F.2d 314, 319 (10th Cir. 1966); *Case v. Abrams*, 352 F.2d 193, 195 (10th Cir. 1965). "The pre-trial order 'measures the dimensions of the lawsuit, both in the trial court and on appeal.'" In this situation, the issue of Geiger-Berger's liability for misrepresentations was tried with its "express consent." *Nat G. Harrison Overseas Corporation v. American Tug Titan*, supra; Rule 15(b) F.R.C.P.

Appellant's further contention that the misrepresentations relied on by Lane were true, is without merit. Our study of the transcript convinces us that under the evidence as a whole, the issue of misrepresentation was for the jury, as Geiger-Berger itself apparently recognized by offering a converse instruction and failing to object to Lane's verdict-directing instruction. We find no plain error or manifest injustice warranting a reversal on this point.

The judgment is affirmed.