*In re* LIQUIDATION OF PINE TOP INSURANCE COMPANY (Stephen F. Selcke, Director of Insurance, as Liquidator of Pine Top Insurance Company, Petitioner-Appellant, v. Joseph A. Duncavage, Adm'r of the Estate of Mary Beth Duncavage, Claimant-Appellee (Illinois Insurance Guaranty Fund, Intervening Petitioner-Appellee)).

First District (4th Division)   No. 1—93—0640

Opinion filed August 11, 1994.

Sidley & Austin, of Chicago (James R. Stinson, Ellen S. Robbins, Peter G. Gallanis, and Daniel A. Guberman, of counsel), for appellant.

Cichocki & Armstrong, Ltd. (Jon A. Duncan and Kelli K. Chase, of counsel), and Chuhak & Tecson (Cary S. Fleischer, of counsel), both of Chicago, for appellee Joseph A. Duncavage.

Lord, Bissell & Brook, of Chicago (Rowe W. Snider, Mark R. Goodman, and Brian T. Garelli, of counsel), for appellee Illinois Insurance Guaranty Fund.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

In a proceeding involving the liquidation of Pine Top Insurance Company (Pine Top), the circuit court of Cook County entered an order on January 15, 1993, approving a claim in favor of Joseph Duncavage, individually, and as administrator of the estate of Mary Beth Duncavage, deceased. The Director of Insurance of the State of Illinois (Director), acting in his capacity as liquidator of Pine Top, appeals from that order.

## BACKGROUND

In June 1984, Duncavage filed a multicount complaint in the circuit court of Cook County against the owners of a residential apartment building in which Mary Beth Duncavage was killed as a result of a criminal assault by Tommy Lee Jackson. The specific facts of that suit are not pertinent to this appeal. It is sufficient to note that each of the defendants in that action, except the assailant, was covered under a primary liability insurance policy issued by

Commercial Union Insurance Company which provided coverage up to $500,000 and an excess umbrella policy issued by Pine Top with a liability limit of $2 million.

In 1986, liquidation proceedings were commenced against Pine Top in the circuit court of Cook County. On January 16, 1987, an order was entered in that action finding that Pine Top was insolvent and appointing the Director as liquidator. On that same date, the court entered an order fixing the time and procedure for filing claims against Pine Top. Because of the action then pending against Pine Top's insureds for the death of Mary Beth Duncavage, Duncavage submitted a proof of claim on October 26, 1987, to the Director for $2 million, which was the policy limit of the Pine Top policy.

On March 11, 1988, Duncavage entered into an agreement entitled "Covenant Not To Execute on Judgment" (covenant) with Pine Top's insureds and Commercial Union. Pursuant to the terms of the covenant, Duncavage received $500,000 and agreed, *inter alia*, that notwithstanding any judgment that could be rendered in the then pending action against Pine Top's insureds, not to seek to enforce any such judgment against them or Commercial Union. Additionally, the covenant provided that it should not be construed to prevent Duncavage from pursuing any claims that he may have against Pine Top Insurance Company, the Director, the Illinois Insurance Guaranty Fund, the Office of the Special Deputy representing the Director, and Tommy Lee Jackson.

On May 10, 1988, after being informed of the settlement between Duncavage and Pine Top's insureds and Commercial Union for the coverage limit of the Commercial Union policy, the Illinois Insurance Guaranty Fund (Guaranty Fund) determined that Duncavage's claim was a valid "covered claim" under the Illinois Insurance Code (Guaranty Fund Act) (Ill. Rev. Stat. 1987, ch. 73, par. 1065.82 *et seq.*), and paid Duncavage $150,000, the statutory limit on his claim (see Ill. Rev. Stat. 1987, ch. 73, par. 1065.87—2). As a consequence of its payment to Duncavage, the Guaranty Fund became a claimant in the liquidation of Pine Top. Ill. Rev. Stat. 1987, ch. 73, par. 1065.95.

Because Duncavage's claim against the estate of Pine Top in liquidation remained unresolved, on November 12, 1991, he filed a petition in the liquidation proceeding seeking approval of the claim and a motion requesting a hearing date to adjudicate the claim. On January 9, 1992, the circuit court ordered the Director to make a recommendation on the Duncavage claim. On April 8, 1992, the Director recommended that Duncavage's claim be denied and filed a motion seeking approval of that recommendation. On January 15, 1993, the circuit court approved Duncavage's claim in the sum of $1.85 million,

which was the gross claim of $2 million less the $150,000 payment received from the Guaranty Fund. The Director appeals from that order.

## OPINION

In urging reversal, the Director contends that: (1) the Pine Top policy was one of indemnity and because Pine Top's insureds did not pay any sums in excess of their primary insurance for the death of Mary Beth Duncavage, no valid claim existed against Pine Top in favor of Duncavage; (2) Duncavage's execution of the covenant precluding recovery against Pine Top's insureds for any amount in excess of their primary insurance extinguished any recovery under Pine Top's policy; (3) allowing Duncavage's claim exposed Pine Top to greater liability under its policy than its total liability would have been if it were not in liquidation; and (4) the circuit court erred by fixing the amount of Duncavage's claim in its order of January 15, 1993.

We address first the question of whether the Pine Top policy was a liability policy or an indemnity policy. The policy provides in pertinent part:

"I. COVERAGE

To indemnify the INSURED for ULTIMATE NET LOSS, as defined hereinafter, in excess of RETAINED LIMIT, as herein stated, all sums which INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses ***."

Based upon this language, the Director contends that the policy is an indemnity policy. From this premise, the Director concludes that because Pine Top's insureds never paid any sums in excess of their "Underlying Limit," which was the limit of their primary insurance, for the death of Mary Beth Duncavage, there is no right of recovery under Pine Top's policy and Duncavage's claim in the liquidation proceeding should have been denied.

■ The function of a liability policy is to shield an insured from being required to make payment on a claim for which he is liable. Under an indemnity contract, the insurer agrees to pay to the insured any sums that the insured has paid or been compelled to pay on a covered claim. The substantive distinction between indemnity and liability policies is that payment of a claim by the insured is a condition precedent to an insured's right to recover under the former, but not the latter. (11 Couch on Insurance 2d § 44:250, at 387 (M. Rhodes rev. 1982).) The liability of an insurer under a liability policy

attaches at the time the liability of the insured is fixed for a covered claim; however, the liability of an insurer under an indemnity policy affixes at the time the insured makes payment on a covered claim. (6B J. Appleman & J. Appleman, Insurance Law & Practice § 4261, at 72 (1979).) In this case, the parties do not dispute that Pine Top's insureds never made any payment to Duncavage in excess of their primary insurance coverage. Therefore, resolving the question of whether the Pine Top policy is for liability or indemnity is critical. If the policy is one of indemnity only, no claim would lie against Pine Top absent payment by its insureds; and, as a consequence, no claim would lie against Pine Top's estate in liquidation because the liability of an insurer in liquidation can be no greater than its liability were it not in liquidation. Ill. Rev. Stat. 1987, ch. 73, par. 821(4).

■ The policy in question is entitled "Umbrella Liability Policy." It obligates Pine Top to "indemnify" the insured for sums which the insured "shall be obligated to pay by reason of the liability imposed upon the insured by law." Additionally, it provides that no action shall lie against Pine Top unless, as a condition precedent, "the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company [Pine Top]." There is little question from the clear language of the policy that it is a liability policy and not an indemnity policy as the Director argues. The policy in issue is a contract to pay liabilities which does not require the insured to make any payment on a claim as a condition precedent to Pine Top's obligations. The "no action" clause of the policy sets forth the entry of judgment against the insured as the condition precedent not the payment of the judgment. Having found that Pine Top's policy is a liability policy, it follows that we reject the Director's argument that the absence of any payment to Duncavage by Pine Top's insureds in excess of their primary insurance coverage mandates disallowing Duncavage's claim in the liquidation proceeding.

We next address the effect that the covenant had upon Duncavage's claim against Pine Top. As stated earlier, under its policy, Pine Top was obligated to indemnify its insureds from liability for the payment of any sums in excess of their primary insurance coverage. The Director argues that by agreeing never to execute upon any judgment that might be rendered against Pine Top's insureds, Duncavage in effect released them from the payment of any sums in excess of their primary coverage. Because Pine Top's insureds could never be obligated to pay any sums in excess of their primary coverage, the Director concludes that Pine Top could never be obli-

gated to pay any sums under its policy (see *Childress v. State Farm Mutual Automobile Insurance Co.* (1968), 97 Ill. App. 2d 112, 239 N.E.2d 492), and Duncavage's claim should have been disallowed. We disagree.

■ The greater weight of authority supports the proposition that covenants not to execute upon the assets of a tortfeasor except to the extent of available insurance coverage do not violate public policy and do not *per se* relieve the tortfeasor's insurer from liability under its policy. (*Bishop v. Crowther* (1981), 101 Ill. App. 3d 933, 428 N.E.2d 1021; *Elas v. State Farm Mutual Automobile Insurance Co.* (1976), 39 Ill. App. 3d 944, 352 N.E.2d 60.) While the wording of the covenant in this case is not couched in terms of an exemption from execution (see *Bishop*, 101 Ill. App. 3d at 936-37), when read as a whole and in light of Pine Top's insolvency, we believe that the covenant has the same effect.

The object of judicial construction of a nonexecution covenant, like any other contract, is to determine the intent of the parties. (*Northern Trust Co. v. Tarre* (1981), 86 Ill. 2d 441, 427 N.E.2d 1217.) Absent ambiguity, the parties' intent is discerned from the language used and the circumstances of the transaction. Once determined, the intent of the parties controls the scope and effect of the agreement. *Shultz v. Delta-Rail Corp.* (1987), 156 Ill. App. 3d 1, 508 N.E.2d 1143; *LaGrange Federal Savings & Loan Association v. Rock River Corp.* (1981), 97 Ill. App. 3d 712, 423 N.E.2d 496.

■ As a general statement, Illinois public policy prohibits an injured party from maintaining a direct action against an insurance carrier for the actions of its insured which fall within the coverage of its policy prior to obtaining a judgment against the insured. (*Richardson v. Economy Fire & Casualty Co.* (1985), 109 Ill. 2d 41, 485 N.E.2d 327; *Marchlik v. Coronet Insurance Co.* (1968), 40 Ill. 2d 327, 239 N.E.2d 799.) However, once a liquidation order has been entered against an insurance carrier, any person who has a cause of action against one of its insureds covered under a liability policy has the right to file a claim directly against the carrier in the liquidation proceeding, regardless of the fact that the liability of the insured has not yet been determined by judgment. (Ill. Rev. Stat. 1987, ch. 73, par. 821(4).) Further, any judgment that might be entered against an insured after the entry of a liquidation order against the insurer may not be considered in the liquidation proceeding as evidence of liability on the part of the insured or the amount of damages sustained by the injured party. (Ill. Rev. Stat. 1987, ch. 73, par. 821(4).) The statutory scheme set forth in section 209(4) of the Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 821(4)) provides an injured party with a direct

claim against the estate of a tortfeasor's insolvent insurance carrier while at the same time protecting that estate from the conclusive effect of any judgments which might be entered against its liability policyholders after the date of an order of liquidation.

■ At the time Duncavage entered into the covenant with Pine Top's insureds, the order of liquidation had already been entered. Consequently, Duncavage had a right to file a direct claim against Pine Top's estate in liquidation, and by the clear and unambiguous terms of the covenant, Duncavage retained that right. Absent a liquidation order, an injured party in Duncavage's position would accept the limits of the tortfeasor's primary insurance coverage and agree not to execute against the tortfeasor's property except to the extent of the proceeds of any excess insurance coverage. In a liquidation proceeding such as the instant case, the retention of an injured party's claim rights against the tortfeasor's insolvent liability carrier is the only effective means by which the injured party can contract to limit the source of his recovery to the protection afforded by the tortfeasor's insurance coverage.

Having determined that the Pine Top policy was for liability coverage and that the nonexecution covenant did not extinguish any right of recovery thereunder, we also reject the Director's contention that allowing Duncavage's claim exposed Pine Top to greater liability under its policy than it would have been exposed to had it not been in liquidation in violation of section 209(4) of the Insurance Code. (Ill. Rev. Stat. 1987, ch. 73, par. 821(4).) The limit of liability under Pine Top's policy was $2 million. The trial court approved Duncavage's claim in the sum of $1.85 million and the Guaranty Fund has a claim for the remaining $150,000. The record before us fails to demonstrate that Pine Top has been exposed to any liability in excess of what it would have been exposed to if it had not been in liquidation, which was its policy limit of $2 million.

■ For his final contention, the Director argues that the trial court erred in fixing the amount of Duncavage's claim in its order of January 15, 1993. The Director contends that he did not have notice the court would fix the amount of Duncavage's claim and, as a result, was deprived of an opportunity to present evidence which would negate coverage under Pine Top's policy and to present argument relating to the proper valuation of the claim.

The order fixing the time and procedure for filing claims against Pine Top was entered on January 16, 1987. Paragraph 1 of the order provided that the Director was to examine, review, and evaluate the claims and report his recommendations to the court for their allowance or disallowance. Upon the filing of the Director's report and any

objections thereto, the order provided that the court would take such further action as may be required. The Director does not dispute that Duncavage filed a timely proof of claim on October 26, 1987, as required under section 208 of the Insurance Code and that it was in the form prescribed by section 209(1). (Ill. Rev. Stat. 1987, ch. 73, pars. 820, 821(1).) Nor does the Director dispute that at the time Duncavage filed the petition for approval of his claim on November 12, 1991, no recommendation had been made to the court on the claim. In response to Duncavage's petition, the trial court ordered that the Director make his recommendation on the claim by April 8, 1992. The Director complied, and in addition to filing his recommendation that the claim be denied, he filed a memorandum in support. In that memorandum, the Director acknowledged that Duncavage filed a timely proof of claim and also submitted documentation in support, but contended that the claim should be denied because of the effect of the nonexecution covenant. The Director made no argument in his recommendation or in his memorandum that the amount of the claim was being questioned.

The parties briefed their respective positions for the trial court. In response to the Director's memorandum, Duncavage again moved the court to approve his claim in the sum of $1.85 million and stated that because the Director objected to the claim on only one ground, if the Director's legal arguments were rejected, he assumed that the court would approve the claim in its entirety. In his reply memorandum in further support of his recommendation, the Director again argued that the nonexecution covenant relieved Pine Top of any liability under its policy and characterized the policy as one of indemnity. However, the Director did take issue with Duncavage's contention that, if the Director's recommendation were rejected by the court, the Director could not then evaluate the claim to make a recommendation to the court as to the amount at which the claim should be fixed.

On August 4, 1992, the trial court heard the arguments of the parties. The Director made the same three arguments before the trial court which we have already addressed and rejected. During the course of those proceedings, the trial court twice indicated that it had no quarrel with Duncavage's assessment of the value of the claim and that in its opinion a jury would award a sum in excess of that amount. The court identified the issue before it as one of law concerning Pine Top's status as an indemnitor and the effect that the nonexecution agreement had upon Duncavage's claim. Also, although the attorney for the Director stated that the issue presented to the court was not the valuation of Duncavage's claim but its existence,

he presented no argument in opposition to the amount requested and acknowledged that he was aware the court was inclined to approve the claim in the sum of $1.85 million if it ruled adversely to the Director on his recommendation to deny the claim. After hearing the arguments of the parties, the court took the matter under advisement.

Before the trial court could rule, the Guaranty Fund filed a petition to intervene in the proceedings to assert its claim for the $150,000 payment to Duncavage. This motion triggered a new round of briefs by the parties. The Director again argued essentially the same points that he raised in his original memorandum in support of his recommendation to disallow Duncavage's claim and the arguments that he raised in the previous hearing. But, as before, the Director did not dispute the valuation of the claim. Duncavage submitted an additional brief responding to each of the Director's arguments and again requested that his claim be approved in the sum of $1.85 million.

The matter was reargued before the trial court on December 1, 1992. As to Duncavage's claim, the Director argued the same points that he had raised in his argument on August 4, 1992, but again made no argument directed to the valuation of the claim should it be allowed. After the argument, the court again took the matter under advisement and, on January 15, 1993, entered its order approving the claim in the sum of $1.85 million.

Section 209(4)(a) of the Insurance Code provides that a claim may be allowed "if it may be reasonably inferred from the proof presented upon such claim that such person would be able to obtain a judgment upon such cause." (Ill. Rev. Stat. 1991, ch. 73, par. 821(4)(a).) Nothing in this section evinces any intent on the part of the legislature that an evidentiary hearing must be held before the court approves a contingent claim. To the contrary, the plain language of the section states that the claim may be approved if it could be reasonably inferred the claimant would have been entitled to obtain a judgment. The "proof presented upon such claim" to which this section refers is the proof of claim filed by the claimant as provided in section 209(1). (Ill. Rev. Stat. 1991, ch. 73, par. 821(1).) It is the court's ultimate responsibility to determine who the creditors of an insolvent insurance carrier are and to fix the amount of their claims. See *Evans v. Illinois Surety Co.* (1925), 319 Ill. 105, 149 N.E. 802.

At the time the trial court entered its order approving Duncavage's claim in the sum of $1.85 million, it had before it both Duncavage's proof of claim and the memorandum and documentation in support of the claim which Duncavage had filed with the Director.

The Director was ordered to make his recommendation on the claim. He did so, but he never objected to the amount of the claim. We have examined the same documentation that was before the trial court and cannot conclude the court abused its discretion when it fixed the value of the claim at $1.85 million. From the documentation present in this record, we find no error or abuse of discretion in the finding that is implicit in the court's order of January 15, 1993, namely, that it could be reasonably inferred that Duncavage would have been able to obtain a judgment in the sum of $2 million or more had his cause of action proceeded to trial against Pine Top's insureds.

As for the Director's contention that he was somehow deprived of an opportunity to present evidence which would negate coverage under Pine Top's policy or that he was prevented from presenting argument on the valuation of Duncavage's claim, the record reflects that he was ordered to make his recommendation and permitted to file memoranda in support of that recommendation. If the Director had other arguments in opposition to the approval of the claim or its valuation, he should have made them before the trial court, but he did not. We believe the record is clear and establishes that the Director was aware that if the trial court rejected his recommendation and approved Duncavage's claim, it would also fix the claim in the sum of $1.85 million. That was the relief Duncavage had requested in every document he filed in support of his petition to approve the claim and in opposition to the Director's recommendation to deny the claim. Also, during the hearing on August 4, 1992, the trial court stated twice that it did not disagree with Duncavage's assessment as to the valuation of the claim. Further, during the same hearing, the Director's own attorney acknowledged he was aware that if the Director's recommendation was rejected, the court was inclined to approve the claim and fix the sum at $1.85 million. Lastly, if the Director was taken by surprise when the trial court fixed the amount of the claim in its order of January 15, 1993, he could have filed a motion before the trial court requesting it to vacate its order and afford him an opportunity to address the valuation issue, but he did not.

The record before us clearly shows that the Director was not prevented from presenting evidence or argument before the trial court on the valuation of Duncavage's claim; rather, the record establishes that he never attempted to do so. Issues not raised or argued before the trial court cannot be argued for the first time on appeal. *In re Estate of Halas* (1991), 209 Ill. App. 3d 333, 568 N.E.2d 170; *Printpack, Inc. v. Container Technologies, Inc.* (1984), 124 Ill. App. 3d 568, 464 N.E.2d 298.

For all of the reasons stated in this opinion, we affirm the order of the circuit court of Cook County entered on January 15, 1993, which approved Duncavage's claim and fixed its valuation at $1.85 million.

Affirmed.

JOHNSON and THEIS, JJ., concur.