# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Liquidation of Legion Indemnity Co.*, 2013 IL App (1st) 120980

---

| | |
|---|---|
| Appellate Court Caption | *In re* LIQUIDATION OF LEGION INDEMNITY COMPANY (Andrew Boron, Director of Insurance of the State of Illinois, as Liquidator of Legion Indemnity Insurance Company, Petitioner-Appellee, v. Robert Rohlwing, Nancy Rohlwing, Robert Pahlke, and Paulette Pahlke, Claimants-Appellants). |
| District & No. | First District, Second Division<br>Docket No. 1-12-0980 |
| Filed | April 16, 2013 |
| Rehearing denied | June 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from the settlement of a claim for the death of a young girl who was struck by a school bus insured by a company that was in liquidation, a settlement agreement was entered into between the girl's parents and the owner of the bus company, after it filed for bankruptcy, that provided for the payment to the parents of $1.2 million from the bus company, $250,000 from the Insurance Guaranty Fund, and $50,000 from uninsured motorist coverage, and in return, the parents assigned their rights to payment from the insurance company to the bus company, but when the bus company submitted a claim for the remaining $5,750,000 limits on the bus company's policies, the liquidator's approval of the $1.2 million amount paid to the parents was upheld on appeal, since allowing the amount requested would result in a windfall for the bus company and circumvent the rule against the assignment of personal injury claims, while the liquidator's recommendation supported the public policy of distributing the assets of liquidated insurance companies to all interested parties in an even-handed manner. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 02-CH-06695; the Hon. Mary Mikva, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Arnstein & Lehr LLP, of Chicago (Hal R. Morris, Mary Cannon Veed, and Konstantinos Amiros, of counsel), for appellants. |
| | Joel A. Haber, Todd A. Rowden, and Timothy L. Binetti, all of Thompson Coburn LLP, of Chicago, for appellee. |
| Panel | JUSTICE SIMON delivered the judgment of the court, with opinion. Presiding Justice Harris and Justice Quinn concurred in the judgment and opinion. |

## OPINION

¶ 1    On October 7, 1998, 10-year-old Kristie Talley suffered substantial injuries that caused her death when the bicycle she was riding was caught between a curb and a school bus owned and operated by Barrington Transportation Co., Inc. (Barrington). Kristie's parents, James and Melanie Talley, brought an action against Barrington, Barrington School District 220 and the driver of the bus, Ralph H. Toppel, Jr. The Talleys pleaded counts seeking compensation for: wrongful death; a survival action; and recovery under the Rights of Married Persons Act (750 ILCS 65/15 (West 1998)). Prior to trial, Legion Indemnity Company (Legion), Barrington's primary and excess insurer, was declared insolvent and placed into liquidation and the Deputy Director of the Office of the Special Deputy Receiver of the State of Illinois Department of Insurance was affirmed as the statutory liquidator of Legion (Liquidator).

¶ 2    As a result of the loss of coverage, Barrington had insufficient resources and was unable to reach a settlement with the Talleys. In response, Barrington filed for bankruptcy on the eve of trial. This effectively halted the trial and the Talleys filed a proof of claim with the bankruptcy court.

¶ 3    Thereafter, Barrington and the Talleys entered into mediation and reached a settlement. Under the relevant terms of the settlement agreement, the Talleys received $1.2 million from Barrington, $250,000 from the Illinois Insurance Guaranty Fund (Fund) and $50,000 from uninsured motorist coverage. In return, the Talleys assigned to Barrington their rights to any payment from Legion. The former principals of Barrington and their next generation, the

Pahlkes and Nancy and Robert Rohlwing (collectively Claimants), submitted a claim in the liquidation of Legion seeking the remaining $5,750,000 limits in Barrington's two policies with Legion. The Liquidator recommended the claim be approved for $1.2 million, the amount Barrington paid to the Talleys apportioned among the two policies.

¶ 4    Claimants objected to the recommendation and the Liquidator filed a petition in the circuit court to approve the claim in the amount recommended. The circuit court entered an order on October 5, 2011, approving the Liquidator's recommendation. On February 27, 2012, the circuit court denied Claimants' motion for reconsideration.

¶ 5    On appeal, Claimants contend that the circuit court erred in determining that the assignment between the Talleys and Barrington was void because it was not one for a personal injury claim but, rather, a contractual right pursuant to the settlement agreement for an accrued right of payment. Claimants contend that the Liquidator had ample opportunity to challenge the reasonableness of the agreed-upon amount of the settlement, but failed to do so, and that the circuit court should have recognized and approved the established value of the claim. Claimants assert that it follows that the Liquidator's determination that the claim was worth $1.2 million, and not the full amount of the assignment, is not supported by the record. Alternatively, Claimants argue that, if the assignment is void and may be disregarded, it does not erase the evidence of record that the Talleys possessed a sizable survival claim. Additionally, Claimants argue that Barrington's motion for partial approval of its claim in the amount paid out was not a compromise or offer to negotiate, but a concession that it was an out-of-pocket sum certain and that its claim was worth no less than that amount. For the following reasons, we affirm the judgment of the circuit court.

¶ 6    I. BACKGROUND

¶ 7    On October 7, 1998, Kristie Talley suffered substantial injuries and was killed near Woodland Elementary School in Carpentersville, Illinois, when the bicycle she was riding was caught between a curb and a school bus owned and operated by Barrington. Kristie's parents brought a wrongful death and survival action against Barrington, the school district and the driver of the bus, Ralph H. Toppel, Jr. Barrington and Toppel denied liability and the matter advanced toward trial.

¶ 8    At the time of the accident, Barrington had primary and excess insurance policies having a combined limit of over $6 million. However, on April 9, 2003, the circuit court entered a liquidation order against Legion, Barrington's primary and excess insurer. Attorneys were provided by the Fund to represent Barrington, but the statutory limit of $250,000 was insufficient to settle the Talleys' claims. Therefore, on September 16, 2003, the eve of trial, Barrington filed a petition for bankruptcy and the trial was postponed because the circuit court had lost jurisdiction over Barrington pursuant to the federal bankruptcy code.

¶ 9    During the bankruptcy proceedings, the Talleys and Claimants entered into mediation over the Talleys' claims. During mediation, the Talleys, Claimants, and the Fund negotiated a settlement. The parties stipulated, and the Talleys submitted a proof of claim, that the claims against Barrington were valued at $7.5 million. The bankruptcy court approved the settlement and the Talleys received $1.2 million from Barrington. Relevant portions of the

settlement agreement provided:

> "The Bankruptcy Court has allowed the Talleys['] Claim in the amount of $7,500,000.00 (Seven Million and Five Hundred Thousand Dollars), and judgment entered thereon, which sum represents the fair and reasonable value of the Action, had the bankruptcy of [Barrington] and the insolvency of Legion Indemnity Company not occurred.

> Pursuant to the Plan [of Reorganization] and in consideration of the sums of $1,200,000 from the Estate of [Barrington], $250,000 from the Fund, and $50,000 from uninsured motorist coverage, receipt of all of which is hereby acknowledged, the Talleys *** hereby covenant and agree that they will not at any time, nor shall anyone for them or on their behalf sue, levy or sue out of an execution or executions against Bob Pahlke, Lorraine Pahlke, Ralph Toppel or Alfred Pahlke ***.

> The Talleys, for themselves and as Special Administrators of the Estate of Kristie Talley hereby irrevocably assign to [Barrington], to the fullest extent permitted by law or other wise, all of their rights to payment if any, from Legion Indemnity Company, In Liquidation, arising out of the claims asserted against [Barrington], the Action or the allowance of the Claim in the Bankruptcy of [Barrington], or this Agreement. ***

> It is understood and expected among the parties hereto that [Barrington] shall seek payment of the Claim allowed in the bankruptcy proceeding and not paid by the Fund or uninsured motorist coverage from the policies of liability insurance issued by Legion Indemnity Company of Illinois and the Talleys shall seek payment of Claim allowed in the bankruptcy proceeding and not paid by the Fund or uninsured motorist coverage from [Barrington] or its successors or assigns to demonstrate the correctness of the allowed claim both as to liability and quantum, and shall, at their own expense, respond to all reasonable requests for information made by [Barrington] or its successors or assigns, execute any documents necessary or useful in prosecuting such insurance claims, and testify if requested at any hearing or trial thereon."

¶ 10    On April 29, 2004, Claimants, in their capacity as assignees of the rights of the Talleys, filed a claim with the Liquidator seeking $5,750,000. The claim represented the remaining limits of the two policies with Legion, $1 million under the primary policy and $5 million under the excess policy, minus $250,000 to reimburse the Fund. On March 19, 2010, the Liquidator made its recommendation, limiting the approval of the claim to the payment of $1.2 million as reimbursement for Barrington's payments to the Talleys. On March 25, 2010, the Claimants objected to the Liquidator's determination, asserting that they were entitled to the full limit of the policies as the judgment entered on the settlement between Barrington and the Talleys in bankruptcy court was for $7.5 million. On February 25, 2011, the Liquidator filed a petition with the circuit court for approval of its claim recommendation.

¶ 11    On October 5, 2011, acknowledging the discretion granted the Liquidator under the Illinois Insurance Code (Code) (215 ILCS 5/209(12) (West 2010)), the circuit court entered an order approving the Liquidator's recommendation. The court agreed with the Liquidator that questions remained regarding the assignment by the Talleys to Barrington, particularly those concerning: Barrington's actual liability in the underlying lawsuit; the limited proof

-4-

that the value of the claim was $7.5 million, some of which was not presented for the Liquidator's consideration; the Code's prohibition against considering judgments effective after the entry of the order of liquidation (215 ILCS 5/209(8) (West 2010)); and case law prohibiting the assignment of personal injury claims. The court opined that the Liquidator correctly determined that the claim assigned by the Talleys to Barrington must be disregarded and found that, while a statutory right to file a claim against the insurer directly and a contractual claim based on the settlement would be otherwise permissible, the claim remained, in essence, a personal injury claim and could not be assigned.

¶ 12    Claimants filed a motion to reconsider. On February 27, 2012, while the circuit court admitted that it did not fully appreciate the legal significance of the assigned claims, it denied the motion to reconsider. The court noted that the Liquidator relied on section 209(8) of the Code, and quoted the relevant portion, which states:

"No judgment against such an insured or an insurer taken after the date of the entry of the liquidation, rehabilitation, or conservation order shall be considered in the proceedings as evidence of liability, or of the amount of damages ***." 215 ILCS 5/209(8) (West 2010).

The court also considered Claimants' argument that language prohibiting reliance on a settlement is absent in section 209(8), while other portions of the Code specifically prohibit reliance on judgments or settlements, and that: the legislature intended to preserve and promote the right to settlement; the Claimants and the Liquidator offered differing arguments, both without citation to supporting case law; and the Liquidator is granted "a great deal of discretion, both in investigating and in resolving claims" under section 209(12) of the Code and, therefore, may determine what to rely on in fashioning its order.

¶ 13    From this, the court reasoned that, while "[i]t is not clear to the Court that the Liquidator is required to consider the value of a settlement agreement entered into after the liquidation order in assigning value to claims in liquidation," the Liquidator properly limited the claim to the amount paid by Barrington. It further opined that the terms of the settlement itself arose out of the stipulated judgment entered by the bankruptcy court after the entry of the order of liquidation and that section 209(8) of the Code prohibits the Liquidator from considering the agreement and the Claimants' reliance on that judgment. The Liquidator, however, was free to investigate and resolve the claim and the court found that its determination was reasonable and proper. This appeal followed.

¶ 14                                  II. ANALYSIS

¶ 15    In seeking recovery of the insurance proceeds, Claimants raise questions in this appeal concerning some of the competing public policy issues presented when an insurer is placed into liquidation and creditors or injured parties are free to pursue claims against the insured while the insured is limited by the discretionary acts of the Liquidator. Due to the complexity of the liquidation process, a large amount of time may elapse between the entry of a liquidation order and the distribution of the insurer's assets. Furthermore, during the liquidation process, the insurer's obligation to defend is terminated. 215 ILCS 5/209(5) (West 2010). While the Fund does provide protections during this period and the Code

-5-

allows for reimbursement of reasonable attorney fees under a claim in a liquidation proceeding, the Claimants highlight that these issues provide numerous possible obstacles and hardships specific to the insured.

¶ 16        Despite what Barrington describes as a "hopeless predicament," it is important to note that the Code was designed to protect the rights of all interested parties while also providing an orderly and efficient procedure for liquidating insurance companies. *Lincoln Towers Insurance Agency, Inc. v. Boozell*, 291 Ill. App. 3d 965, 969 (1997). The comprehensive nature of the Code reflects the rationale under the Code's procedures to provide a means of marshaling and distributing the assets of the company under court supervision while avoiding preference of certain creditors. *Id.* at 969-70. This statutory scheme and the rule of absolute priority established under section 205 of the Code also limit the Liquidator and trial court in considering special circumstances, providing preferential treatment, or otherwise fashioning some form of equitable relief. *In re Conservation of Alpine Insurance Co.*, 318 Ill. App. 3d 457, 462 (2000).

¶ 17        Under the Code, when the liquidation order is entered, "any person who has a cause of action against an insured of the insurer under an insurance policy issued by the insurer shall have the right to file a claim in the proceeding." 215 ILCS 5/209(6) (West 2010). Both the insured and the injured party may file a contingent claim with the Liquidator, which shall be allowed if it "is liquidated and the insured claimant presents evidence of payment of such claim." 215 ILCS 5/209(4)(a), (6) (West 2010). A contingent claim by either an insured or an injured party may be allowed by estimation if a judgment may be reasonably inferred, there is suitable proof that no additional claims exist against the insurer arising out of the cause of action, and the total liability of the insurer is no greater than if it were not in liquidation. 215 ILCS 5/215(4)(b), (6) (West 2010).

¶ 18        In the instant matter, Claimants contend that the Liquidator and trial court erred in denying their claim for the remainder of the policy limits based on the value agreed upon by the parties in settlement and as fixed by the bankruptcy court. While they acknowledge that section 209(8) rejects the consideration of judgments after the date of liquidation, Claimants assert that the assignment was freely bargained for by the parties and it is their right to pursue the remainder of the policy limits as, at that time, there no longer was a personal injury claim but, rather, contractual rights between Claimants and the Talleys. Claimants point out that section 209(8) of the Code does not mention assignments or agreements and argue that the prohibition is on judgments in an attempt to infer that the legislature intended to preserve the right to settlement. From this they argue that the Liquidator and circuit court improperly rejected the assignment and limited their claim to the amount paid to the Talleys. We agree with the circuit court that the Liquidator's allowance of $1.2 million to Barrington as reimbursement for the payment of the like amount it made to the Talleys was proper, rather than the $5,750,000 requested by Claimants, which would constitute a windfall of $4,550,000 to be paid to the entity which was responsible for the accident.

¶ 19        A claimant must support its claim by providing a signed statement including applicable enumerated items, or other information required by the Liquidator during the proceeding. 215 ILCS 5/209(1), (2) (West 2010). Claimants concede that Illinois has a long-standing prohibition against the assignment of personal injury claims as being against public policy.

*North Chicago Street R.R. Co. v. Ackley*, 171 Ill. 100 (1897). Claimants counter that the long-standing public policy favoring settlement of disputes supports the Talleys' negotiation and assignment of this contractual right against Legion as doing so was their only effective means to protect the recovery afforded by Barrington's policy. See *In re Liquidation of Pine Top Insurance Co.*, 266 Ill. App. 3d 99 (1994). Claimants also argue that, after the settlement was reached, the personal injury cause of action no longer existed and that the Talleys had conveyed a contractual right to them. *M.H. Detrick Co. v. Century Indemnity Co.*, 299 Ill. App. 3d 620, 624 (1998). They assert that the public policy concerns behind barring the assignment of personal injury causes of action do not apply here and the countering policy arguments supporting the right to contract support their claim.

¶ 20    In addition, Claimants contend that this court has held that where an insurer should defend a claim, but fails to do so, the insured may bind the insurer by entering into a settlement in "reasonable anticipation of liability." In support for their position, Claimants cite *Guillen v. Potomac Insurance Co. of Illinois*, 323 Ill. App. 3d 121, 136 (2001), *aff'd as modified*, 203 Ill. 2d 141 (2003), where the insureds entered into a settlement agreement with the plaintiff after the insurer defendant denied coverage and refused to defend the insureds. The insureds' agreement to pay was based solely on the assignment to the plaintiff of all their rights to payment from the insurer. *Guillen*, 323 Ill. App. 3d at 124-25. Finding that the insured breached its duty to defend, the court stated that the law in Illinois is clear that an insured has the right to enter into a settlement agreement on its own in reasonable anticipation of liability. *Id.* at 132-36.

¶ 21    Claimants argue that the rule in *Guillen* was applied years earlier in the context of a liquidation proceeding in *Pine Top*. In *Pine Top*, Pine Top Insurance Company was put into liquidation during the pendency of a survival cause of action against its insureds. The plaintiff submitted a proof of claim in the liquidation proceeding and subsequently entered into an agreement with defendant insureds whereby, without bargaining away any right to pursue a claim against Pine Top, the plaintiff received $500,000 and agreed, *inter alia*, not to seek any judgment against the insureds. *Pine Top*, 266 Ill. App. 3d at 101-02. The Liquidator recommended that the plaintiff's claim be rejected, but the circuit court approved the plaintiff's claim for the remainder of the limits of Pine Top's policy. *Id.* at 102-03.

¶ 22    Citing to section 209(6) of the Code and the right of an injured party to file a direct claim against the insurer once a liquidation order is entered, the *Pine Top* court affirmed the approval of the claim for the remainder amount of the insurance policy. *Id.* at 105. In finding that the plain language of the nonexecution covenant did not extinguish the plaintiff's right to pursue Pine Top, the court noted that "[i]n a liquidation proceeding such as the instant case, the retention of an injured party's claim rights against the tortfeasor's insolvent liability carrier is the only effective means by which the injured party can contract to limit the source of his recovery to the protection afforded by the tortfeasor's insurance coverage." *Id.* at 106. The court found that the $2 million limit of liability under Pine Top's policy, the approval of the $1.85 million claim, after $150,000 paid by the Fund was subtracted, was reasonable under the record. *Id.* The court then rejected the Liquidator's claim that the plaintiff failed to provide support for the amount requested because the Liquidator did not dispute the valuation of the claim at any time prior to the appeal. *Id.* at 108-09.

¶ 23    Claimants maintain that *Pine Top* stands for the proposition that injured parties can and should negotiate settlements to assure the fullest recovery and that their settlement agreement and assignment should be accepted by this court as a bargained-for contractual right. At oral argument, claimants' counsel repeatedly advanced this argument and asserted it was the best policy for all parties involved, noting that bankruptcy and liquidation proceedings are complex and drawn-out and the social impact of resulting uncertainty is vast. Counsel argued that it is best for parties to settle so that the injured party can receive compensation and companies, such as Barrington, can remain in business and serve the community without the uncertainty of litigation or bankruptcy. Counsel asserted that the secondary market in insurance benefits removes all of these poor alternatives and gives certainty to the parties in exchange for the risk and possible reward for the investment.

¶ 24    Despite *Guillen* and *Pine Top*, we agree with the Liquidator that Claimants' arguments were properly rejected by the trial court and the claim was correctly limited to the amount paid out by Barrington. *Guillen* and *Pine Top* are distinguishable from this case. *Guillen* involved a claim that the insurer wrongfully denied coverage of a claim and breached its duty to defend. Nothing of that sort has occurred here, the insurer was not in liquidation and the provisions of the Code did not apply to that case. *Pine Top* did involve an insurer in liquidation and a negotiated settlement; however, the claim under section 209(6) in that liquidation proceeding was made directly by the injured party and did not involve the assignment of any claim.

¶ 25    The instant matter involved a claim made against the insurer by the insured, standing in the place of the injured party and based on a judgment and agreement entered after the date of liquidation. It is correct that section 209(8) of the Code does not mention agreements or settlements in prohibiting the consideration of a judgment as conclusive evidence. However, as the Liquidator and circuit court concluded, the settlement is specifically based on the judgment entered in the bankruptcy court and Claimants cannot circumvent parts of the Code through contractual negotiation. Parties remain free to negotiate settlements and should be encouraged to do so but, when negotiations take place or judgments are entered after the date of the entry of a liquidation order, the claim remains subject to the determination of the liquidator as detailed in the comprehensive scheme of the Code.

¶ 26    Further, in strict adherence to the Code, we note that "any insured under an insurance policy" may have a contingent claim allowed under section 209(4)(a) if it is liquidated and the insured presents evidence of payment. 215 ILCS 5/209(4)(a) (West 2010). Section 209(6) of the Code allows "any person who has a cause of action against an insured of the insurer" to bring a claim. 215 ILCS 5/209(6) (West 2010). But this is of no avail to Claimants because the plain language of this section does not grant the right to bring an action to assignees of the injured party but, instead, limits the right to bring a claim to the injured party itself.

¶ 27    We agree with the Liquidator that Claimants' arguments here run afoul of not only the policy behind the prohibition of assignment of personal injury claims, but also the public policy behind the Code to provide efficient and comprehensive relief to claimholders and the policy behind general insurance to indemnify the insured for loss and not provide a windfall profit. The settlement agreement between Barrington and the Talleys was specifically based on the judgment entered in the bankruptcy proceeding, which occurred after the date of the

entry of the liquidation. Accordingly, the weight afforded the settlement is not conclusive and is to be determined by the Liquidator. The Liquidator's argument that the settlement must fail because it was not involved in negotiations is not supported by the Code or case law, but the Liquidator's role in evaluating such an agreement and determining value is supported by the overall policy set forth in and underlying the Code.

¶ 28 Counsel conceded at oral argument that this situation does "give[ ] you kind of a funny feeling," but repeated that allowing an open secondary market for claims is the soundest public policy for all parties. This scenario is anathema to the Code and such dealing stands the Code on its head. It is more akin to speculating in future interests or the common law offenses of barratry, maintenance, and champerty than sound public policy assuring maximization of the liquidated insurer's assets. Agreeing with Claimants would allow a windfall profit and, essentially, circumvention of the general rule against the assignment of personal injury claims. The Liquidator's recommended claim made Barrington whole, supporting the public policy behind insurance claims and the policy and structure of the Code to comprehensively marshal and distribute the assets of the liquidated insurer to all interested parties in an even-handed manner. Accordingly, we affirm the judgment of the circuit court.

¶ 29                                           III. CONCLUSION
¶ 30 For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 31 Affirmed.