784 A.2d 73 (2001)
345 N.J. Super. 130
INGRASSIA CONSTRUCTION COMPANY, INC., Plaintiff-Respondent,
v.
VERNON TOWNSHIP BOARD OF EDUCATION a/k/a Vernon Township Public Schools, Defendant Appellant, and
Vincentsen Consulting, Inc., Dean Slate, Wiedersum Association, P.C., and George Ferman, Defendants, and
Vernon Township Board of Education, Third-Party Plaintiff,
v.
Great American Insurance Co., Third-Party Defendant.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 2001.
Decided November 8, 2001.
*75 James L. Plosia, Jr., Warren, argued the cause for appellant Vernon Township Board of Education (Apruzzese, McDermott, Mastro & Murphy, attorneys; Mr. Plosia, of counsel and on the brief; John D. Miller, III, on the brief).
Bruce D. Meller, River Edge, argued the cause for respondent (Peckar & Abramson, attorneys; Mr. Meller, of counsel; Lynn D. Shavelson, on the brief).
Before Judges PRESSLER, CIANCIA and PARRILLO.
*74 The opinion of the court was delivered by PRESSLER, P.J.A.D.
This controversy arises out of the general construction contract for major renovations of and additions to the Vernon Township High School entered into between plaintiff Ingrassia Construction Company, Inc., the low bidder, and defendant, Vernon Township Board of Education. The contract provided for a final completion date of July 1, 1999. The Board, believing that plaintiff was in substantial breach of the contract, terminated it in May 1998. In May 1999, plaintiff filed a complaint against the Board, its architect and its project manager seeking damages for what it alleged to be a wrongful termination. The Board counterclaimed, seeking damages against plaintiff flowing from plaintiff's asserted breach. On plaintiff's motion for summary judgment against the Board, the court granted it partial summary judgment of liability and dismissed a portion of the Board's counterclaim. We granted the Board's motion for leave to appeal and now reverse.
The gravamen of plaintiff's summary judgment motion was its assertion that the Board had terminated the contract in violation of the termination-for-cause provisions of the contract in that it based the termination on a procedurally and substantively defective architect's certificate and, further, that that contractual violation by the Board, ipso facto and without regard to any deficiencies there may have been in its own contractual performance, entitled it to wrongful-termination damages including payments for all work done prior to the termination, loss of profits, office overhead, and its obligations to its subcontractors. By the same token, it asserted that by reason of the Board's improper termination, the Board was not entitled to recover damages for the deficiencies, if any, in plaintiff's performance that led the Board to its termination decision and was, further, not entitled to the liquidated damages provided for by the contract for plaintiff's failure to comply with its promised milestone dates. The trial judge agreed that as a summary judgment matter, the architect's certificate on which the termination was based was defective. It also agreed that the consequence of that defect was plaintiff's entitlement to the damages it sought against the Board and the Board's forfeiture of its claim for the damages it sustained as a result of the termination, sought in the first count of its *76 counterclaim, as well as its forfeiture of liquidated delay damages, sought in the second count of the counterclaim. The court left intact for trial, however, three counts of the counterclaim by which the Board sought damages for allegedly improper work by plaintiff in pouring a concrete floor, for corrective work it allegedly had to have done, and for plaintiff's failure to have paid subcontractors who filed construction liens against the property.
We agree with the trial court's conclusion that the architect's certificate failed to substantially comply with the contract requirements. We disagree, however, with its views regarding the consequences of that non-compliance which we believe were based on a misperception of the nature and function of an architect's certificate and which failed to take into account the common-law remedies available to the Board and expressly reserved to it by the contract.
The Board had retained the architectural firm of Wiedersum Associates, P.C., as its design professional and administrator of the contract. Wiedersum assigned George Ferman to the project. Ferman, a licensed architect in Canada, is not licensed anywhere in the United States. The Board had also retained Vincentsen Consulting, Inc., as its project manager, and it appears that it was Vincentsen personnel rather than the architects who were supervising the job on a day-to-day basis.
Plaintiff started work on the job in September 1997. The performance of the work was subject to a specific schedule of milestone dates, that is, dates on which specific phases of the project were to be completed, the meeting of those dates, moreover, having been designated as essential conditions of the contract. According to the certifications submitted by the Board on the summary judgment motion, plaintiff consistently failed to meet the milestone dates, had insufficient workers on the job to enable it to comply with those dates, and was refusing to perform the work as directed. Accordingly, in January 1998, four months after the work had commenced, Vincentsen wrote to plaintiff and its surety advising them that the Board was considering declaring plaintiff in default for its persistent refusal "to supply the project with enough properly skilled workers to maintain the ... job schedule and contract milestone dates." The situation, as asserted by the Board, thereafter deteriorated rather than improving despite its frequent notifications and warnings to plaintiff.
Matters apparently came to a head in the spring of 1998, when the Board and its representatives met with plaintiff to complain about plaintiff's failure to properly provide the required subsurface for a concrete floor, thus compromising the radon-protection system. Plaintiff's denial of a failure to comply with the contract specifications was contradicted by test borings taken thereafter which confirmed the asserted defect. By the beginning of May 1998, the Board concluded that plaintiff's persistent failure to perform both as to time and as to quality required termination of the contract and its engaging of another contractor to complete the project. It appears that plaintiff never denied that it had missed the milestone dates but rather attributed its inability to meet them to improper and obstructive actions of the Board. The factual questions involving plaintiff's performance and whether it had materially breached the contract have never been resolved.
The Board attempted to terminate the contract pursuant to its terms. We note that the contract documents included a so-called Standard Form of Agreement Between Owner and Contractor; General Conditions of the Contract for Construction, *77 Document A201 of the American Institute of Architects (AIA Document A201); Supplementary General Conditions which, section by section, modified AIA Document A201; and Special Conditions. The termination procedure invoked by the Board is set forth in section 14.2 of AIA Document A201, captioned "Termination By The Owner For Cause" and provides in relevant part as follows:
14.2.1 The Owner may terminate the Contract if the Contractor:
1. persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;
2. fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;
3. persistently disregards laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction; or
4. otherwise is guilty of substantial breach of a provision of the Contract Documents.
14.2.2 When any of the above reasons exist, the Owner, upon certification by the Architect that sufficient cause exists to justify such action, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:
1. take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;
2. accept assignment of subcontracts pursuant to Paragraph 5.4; and
3. finish the Work by whatever reasonable method the Owner may deem expedient.
As we understand the record, including the deposition of George Ferman, Mr. Ferman did not independently reach the decision that there was sufficient cause for terminating the contract. Rather, when he was asked by the Board and its project manager to provide such a certification, he explained that since he was not daily on the job, he would not be able to certify from his own knowledge and observations that there was sufficient cause for termination. He did agree, however, that he knew the milestones had not been met, and the certification he consequently provided stated only that fact, failing, moreover, to make the further assertion that missing the milestones constituted either a substantial breach of the contract or sufficient cause for termination. The trial judge concluded that, as a matter of law, this certification by an unlicensed architect failed to meet the requirements of section 14.2.2, and we agree.
The problem then is to determine the consequences that flow from a termination based on a defective architect's certificate. We conclude that those consequences are limited to depriving the owner of any finality, presumption of correctness, or obligation of judicial deference that would otherwise attach to a proper architect's certification. Accordingly, the parties are left to their common-law causes of action for breach of contract, plaintiff being free to assert and attempt to prove that it was wrongfully terminated, and the Board being free to assert and attempt to prove that the termination was justified by reason of the material breaches that motivated it. See, e.g., Medivox Prod., Inc. v. Hoffmann-LaRoche, Inc., 107 N.J.Super. 47, 58-59, 256 A.2d 803 (Law Div.1969), in which Justice, then Judge, Handler explained as a matter of basic contract law that if "during the course of performance one party fails to perform *78 `essential obligations under the contract,' he may be considered to have committed a material breach and the other party may elect to terminate it." See also Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990); Frank Stamato & Co. v. Borough of Lodi, 4 N.J. 14, 21, 71 A.2d 336 (1950); Magnet Res. Inc. v. Summit MRI, Inc., 318 N.J.Super. 275, 285, 723 A.2d 976 (App.Div.1998).
We are impelled to this conclusion by our consideration of the role of the architect in the context of the contract documents here. To begin with, it is well understood, as a general matter, that in the typical construction contract and certainly in AIA Document A201, the architect or other designated design professional such as an engineer, has multiple roles. As analyzed by the Supreme Court in Terminal Constr. Corp. v. Bergen County Hackensack River Sanitary Sewer Dist. Auth., 18 N.J. 294, 313, 113 A.2d 787 (1955), the design professional functions as agent of the owner, as a consultant, and also as an arbiter. Thus, Article 4 of AIA Document A201 designates the architect, defined as one who is licensed to practice architecture, as the administrator of the contract and as the arbiter of contract disputes. Section 4.3.1 defines claims and disputes subject to the architect's determination as
a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be made by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.
We have no doubt that the Board's claims against plaintiff during the life of this contract, including its claim of a right to terminate because of substantial breach, were included within this definition.
Section 4.4.4 further provides that after the architect has attempted to adjust the claim or dispute pursuant to the contractual procedures but is unable to resolve it, he must render a decision which shall be "final and binding on the parties but subject to arbitration." Significantly, the Supplementary General Conditions made a part of the contract documents here delete from section 4.4.4 the phrase "subject to arbitration," thus rendering the architect's decision conclusive.[1]
The conclusiveness of the architect's decision as embodied in his certification, absent bad faith, fraud, or gross mistake comports with his perceived role as arbiter. Thus as explained by Terminal Constr. Corp., supra, 18 N.J. at 317, 113 A.2d 787:
The philosophy of the law in this respect has been stated to be: "If the engineer has acted in good faith after fair investigation of the facts, the courts give conclusive effect to his decision as the parties agreed." 3 Corbin on Contracts (1951), § 652, p. 600. It has been said that the decided cases are generally in accord, and that if the architect or engineer has acted fraudulently or has committed a gross mistake the contractor is entitled to payment. Grismore on Contracts (1947), § 164, pp. 252-253. Cf. Massman Const. Co. v. Lake Lotawana *79 Ass'n, 240 Mo.App. 469, 210 S.W.2d 398, 402 (Ct.App.1948).
The underlying rationale of this philosophy of constructive fraud is that in determinations under this type of contract the "high point in the Architect's (or engineer's) practice of his profession" lies in those instances "when in order to do justice to the Contractor he has to oppose the desire of his employer, the Owner." Parker and Adams, The AIA Standard Contract Forms and The Law (1954), p. 54. It has been said that the architect or engineer occupies a position of trust and confidence, and that "he should act in absolute and entire good faith throughout," and that when he acts under a contract as "the official interpreter of its conditions and the judge of its performance" he should "side neither with the Owner nor with the Contractor" but exercise impartial judgment. American Institute of Architects, The Handbook of Architectural Practice (1943), ch. 8, pp. 19, 20; ch. 48, p. 81.
See also Landstra v. Bunn, 81 N.J.L. 680, 684, 80 A. 496 (E. & A.1911) (engineer's certificate, made in good faith after fair investigation of the facts, is conclusive). And see 8 Corbin on Contracts § 31.14 at 120 (McCauliff rev. ed.1999). From the foregoing then, it appears that if the architect's certificate is given in good faith, without gross error, and complies with the procedural and substantive requirements of the contract, it is conclusive with respect to the facts stated therein.
We digress to note that during the nearly half-century that has elapsed since the decision in Terminal Constr. Corp., supra, 18 N.J. 294, 113 A.2d 787, the increasing complexity of construction projects has resulted in modification of the traditional arbiter role of the architect in which his decision is final and binding. See, e.g., Sweeney Co. of Md. v. Engineers-Constructors, Inc., 823 F.2d 805, 808 (4th Cir.1987). And see generally Note, Architectural Malpractice: A Contract Based Approach, 92 Harv. L.Rev. 1075 (1979). The arbitrability of the architect's decision provided for by the current version of AIA Document A201 is in recognition of and response to the concerns engendered by the conclusive effect that had been formerly embodied in the AIA standard forms. See, e.g., Forge Square Assocs. v. Constr. Servs. of Bristol, Inc., 43 Conn.Supp. 32, 638 A.2d 653, 654 (1993) (arbitrators have authority to reject, as improperly based, the architect's certificate in support of owner's termination); Horne v. State Bldg. Comm'n, 222 Miss. 520, 76 So.2d 356 (1954) (content of architect's certificate in support of subcontractor's default is factually reviewable by arbitrators). Nevertheless, the parties remain free to determine by their contract that the architect's decision will be final and binding, see, e.g., Lane v. Geiger-Bergen Assocs., 608 F.2d 1148, 1151 (8th Cir. 1979), and that is, as well, its consequence if arbitration is contractually provided for but not demanded. See, e.g., Fabrizio v. Fabrizio, 133 Conn. 108, 48 A.2d 375, 376 (1946). As we have pointed out here, the "subject to arbitration" language of section 4.4.4 of AIA Document A201 had been deleted by the parties' agreement, thus rendering the architect's decision final and binding.
We also note that while some authorities suggest a reluctance to accord a conclusive effect to the architect's decision, there is apparently no question that, at the least, it is entitled to considerable weight either by way of a presumption of correctness or by compelling judicial deference.[2] *80 See Justin Sweet, Legal Aspects of Architecture, Engineering and the Construction Process, § 29.09 at 658-660 (5th ed.1994), suggesting that while various degrees of finality have been accorded to the architect's certificate, there is nevertheless general agreement that "the decision is conclusive if honestly made unless it is clear that the design professional made a serious mistake." Id. at 659. And although Sweet appears to question the soundness of according a degree of finality to the architect's certificate issued in support of an owner's termination, he recognizes its entitlement thereto. Id., § 34.03 at 747, 748.
Obviously, we need not here decide the degree of finality to which a proper architect's certificate in support of termination would bear. It suffices to say that whatever that degree is and to whatever extent the certificate is conclusive, substantial compliance with the contractual requirements for such a certificate is a condition precedent to the owner's reliance thereon and thus to the owner's entitlement to the benefit thereof in justifying the termination and seeking its resultant damages.
But what if the architect's certificate is, as here, irremediably defective or if there is a termination by the owner without any architect's certificate at all?[3] Plaintiff urged and the trial court agreed that a proper certificate is a condition precedent to the owner's right to terminate at all. Clearly that is not so. To be sure, a proper certificate is a condition precedent to according the owner the degree of finality the certificate represents. To that extent, a proper certificate is a condition precedent to the owner's right of termination under the contract. But it is not a condition precedent to the owner's exercise of its common-law right of termination subject to the normal and traditional burden of proof of material breach from which it would be largely exempted by a proper certificate. This is clear from the contract documents themselves. Thus, section 13.4.1 of AIA Document A201 expressly provides the "[d]uties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law." And indeed, section 14.2.2, the termination-on-certificate clause, itself provides that the termination procedure therein prescribed is "without prejudice to any other rights or remedies of the Owner...."
We think it plain that an owner who terminates the contract because it believes that the contractor has materially breached the contract cannot be deemed to have forfeited its right to prove the breach and the resultant damages simply because it has disadvantaged itself by not following the contractual termination procedures and has thereby lost the benefit of the conclusiveness of the certificate. That is *81 particularly so where the contract itself, as here, has expressly preserved common-law remedies. Moreover, we do not believe that the law of this state is to the contrary. We have carefully considered Wilson v. Borden, 68 N.J.L. 627, 54 A. 815 (E. & A.1903), relied on by both plaintiff and the trial court. There, the architect's certificate in support of termination was found to be defective, and the trial court directed a verdict in favor of the plaintiff-contractor for the value of the work he had completed. The Court of Errors and Appeals reversed and remanded, explaining the correct measure of damages to which the plaintiff would be entitled if he had been improperly prevented from completing the work but making clear that the defendant "would have a right to set up and show that the plaintiff had not done his work in compliance with the contract, and to claim such rebate as would satisfy the loss by reason of non-compliance." Id. at 631, 54 A. 815. We do not read that opinion as restricting the owner's claim to recoupment, limited by the amount of plaintiff's claim, rather than setoff, that is, a counterclaim unaffected by the amount of plaintiff's claim. See, Beneficial Fin. Co. of Atl. City v. Swaggerty, 86 N.J. 602, 609, 432 A.2d 512 (1981). And we do not read Wilson as coming to an essentially different conclusion from that we have reached here.
The partial summary judgment of liability on the first three counts of plaintiff's complaint and dismissing the first two counts of the Board's counterclaim is reversed. We remand for further proceedings consistent with this opinion.
NOTES
[1] The Supplementary General Conditions also deletes the arbitration provisions of the AIA Document A201.
[2] See, e.g., Bolton Corp. v. T.A. Loving Co., 94 N.C.App. 392, 380 S.E.2d 796, 804, review denied, 325 N.C. 545, 385 S.E.2d 496 (1989) (according the architect's certificate the status of "prima facie correct").
[3] Our research has disclosed only one reported decision in which that question was squarely raised. It was, however, not answered. See Whitehall Co. v. Barletta, 404 Mass. 497, 536 N.E.2d 333, 338 (1989), in which the trial court instructed the jury on the contractor's counterclaim that proper termination of the contract by the owner required an architect's certificate of sufficient cause. No certificate had there been obtained by the owner prior to the termination. Because the jury, however, returned a no-damages verdict on that counterclaim, the court refused to consider the owner's challenge to the instruction, noting that even if it were erroneous, the owner was not prejudiced thereby by reason of the jury's verdict.