2018 IL App (1st) 171613
No. 1-17-1613

SIXTH DIVISION
November 16, 2018

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* LIQUIDATION OF LUMBERMENS MUTUAL CASUALTY COMPANY, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| (THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* JENNIFER HAMMER, Director of Illinois Department of Insurance, | ) ) ) ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| LUMBERMENS MUTUAL CASUALTY COMPANY, an Illinois Domestic Property and Casualty Mutual Company, AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, an Illinois Domestic Property and Casualty Mutual Company, and AMERICAN MOTORISTS INSURANCE COMPANY, an Illinois Domestic Stock Insurance Company, | ) ) ) ) ) ) ) ) ) | No. 12 CH 24227 |
| Defendants, | ) ) | |
| (North Plainfield Board of Education, Claimant-Appellant)). | ) ) ) | Honorable Kathleen Pantle, Judge Presiding. |

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Harris concurred in the judgment and opinion.

**OPINION**

¶ 1       Claimant, the North Plainfield Board of Education (Board), which represents the school district for North Plainfield, New Jersey, appeals an order of the circuit court that disallowed its claim against American Motorists Insurance Company (AMICO), which is involved in insurance liquidation proceedings in the circuit court of Cook County. On appeal, the Board contends that (1) it was entitled to an evidentiary hearing before its claims were disallowed, (2) the circuit court erroneously disallowed its claims for liquidated damages related to a construction project, and (3) it is entitled to recover liquidated damages and actual damages. We affirm.

¶ 2                                  I. BACKGROUND

¶ 3       In 2001, the Board embarked on a $32 million project to renovate and expand five schools. The Board awarded the construction contract to D&D Associates, Inc. (D&D), in three separate contracts known as Contracts 1A, 1B, and 1C. Contract 1A covered the East End and West End Schools, Contract 1B covered the Middle/High School and Stony Brook School,[1] and Contract 1C covered the Somerset School. According to the Board's superintendent, the project was expected to be completed by September 2002. D&D was to serve as the general contractor, and AMICO served as D&D's surety for the project. The Vitetta Group, Inc. (Vitetta) was the architect. In 2003, the Board purported to terminate D&D and called on AMICO to complete the project. In 2005, AMICO commenced an action that sought approximately $2.2 million in contract balances owed by the Board to AMICO. As a counterclaim, the Board asserted liquidated delay damages that at one point approximated $15 million. Litigation proceeded in New Jersey, which included the parties filing motions for summary judgment and motions *in limine*.

_____

[1]No issues relating to Stony Brook School are involved in this appeal.

¶ 4 On August 16, 2012, the circuit court of Cook County entered an agreed order of rehabilitation with respect to AMICO, which was domiciled in Illinois. The order enjoined the bringing of or further prosecuting any affirmative claims against AMICO outside of the Illinois proceeding. On May 8, 2013, the circuit court entered an order of liquidation with a finding of insolvency, which converted the rehabilitation into a statutory liquidation and again enjoined the bringing of or prosecuting any claims against AMICO outside of the Illinois proceeding. Lumbermens Mutual Casualty Company (Lumbermens) is the successor to AMICO.

¶ 5 A New Jersey court enforced the Illinois anti-suit injunction and dismissed the Board's counterclaim for liquidated damages without prejudice to the Board's right to bring the claim in the Illinois proceeding. In July 2013, the Board filed a petition for relief in Illinois from the anti-suit injunction so that its counterclaim could be pursued in New Jersey. The circuit court denied the Board's petition and confirmed that the Board could not assert its delay claims in New Jersey. A bench trial in New Jersey was held on AMICO's claims, and on May 19, 2015, the law division of the Superior Court of New Jersey entered a final judgment in favor of AMICO for $2,647,115.37.

¶ 6 The Board filed a claim against AMICO in the Illinois proceeding, contending that AMICO was liable to the Board for liquidated and actual damages for delays in project construction. The Board sought $14,022,883.34 plus interest in liquidated damages and $1,471,017.96 plus interest in actual damages.

¶ 7 Subsequently, the liquidator for Lumbermens filed a motion to disallow the Board's claim. In part, the liquidator contended that the Board was not entitled to liquidated damages for delayed substantial completion because the Board took occupancy in time for the 2002 school year. The liquidator further asserted that the Board was not entitled to liquidated damages for

delayed substantial completion of various interim milestones and the Board could not recover actual damages per the terms of the construction contract and applicable law.

¶ 8    The Board filed a response, noting that the liquidator had proffered the Board's expert reports from the New Jersey proceedings. The Board stated that Contract 1A was substantially complete on December 8, 2004, and Contract 1B was substantially complete on November 17, 2004. The Board further contended in part as follows. The Board's dates of substantial completion were presumptively established by the architect's certifications, which could be overcome only by proof of fraud or bad faith. Moreover, the liquidator should be estopped from disavowing the architect's dates of substantial completion because AMICO relied on those dates to obtain judgment against the Board in New Jersey. The New Jersey court also held that liquidated damages may be awarded even after a building is occupied and operational. The Board maintained that it could recover both liquidated and actual damages under the construction contracts.

¶ 9    On May 9, 2017, the circuit court entered a written order that granted the liquidator's motion to disallow the Board's claim and stated in part as follows. Although at oral argument, the Board had requested an evidentiary hearing if its claim was disallowed, the Illinois Insurance Code (Code) (215 ILCS 5/1 *et seq.* (West 2014)) did not require an evidentiary hearing. Further, the Board had the burden to show that it could be reasonably inferred from the proof presented on the claim that the Board would be able to obtain a judgment on the counterclaim that was initially pursued in New Jersey.

¶ 10    The court discussed the Board's monetary claims. Under the construction contract, the Board could assess liquidated damages until the date of substantial completion. For Contracts 1A and 1B, that date was September 2002, according to temporary certificates of occupancy and

statements from the Board's superintendent. Further, there was evidence that the architect was biased and acted arbitrarily and that the Board's expert reports were "flawed in many respects." The Board's claim for liquidated damages for Contract 1C was related to issues with the Somserset School's chimney. The court found that any delay pertaining to the chimney demolition was directly caused by Vitetta and the Board, in that neither of them understood the existing condition of the structure when the project began. Also, the Board's claims for liquidated damages for alleged missed interim milestones were meritless. Further, the Board was not entitled to actual damages under New Jersey law.

¶ 11                                II. ANALYSIS

¶ 12                          A. Evidentiary Hearing

¶ 13    On appeal, the Board first contends that it was entitled to an evidentiary hearing before its claims were disallowed. The Board argues that the Code expresses a legislative policy to indulgently permit contingent claims and, moreover, that nothing in the statute allows a court to summarily disallow a contingent claim without an evidentiary hearing where substantial evidence supports the claim. The Board further states that its claims in New Jersey were dismissed because of AMICO's insolvency, but the Board was granted the right to adjudicate its claims in the Illinois proceeding. According to the Board, without an evidentiary hearing, the Board will be denied a fair opportunity to present its claims in either New Jersey or Illinois.

¶ 14    "[T]he Code was designed to protect the rights of all interested parties while also providing an orderly and efficient procedure for liquidating insurance companies." *In re Liquidation of Legion Indemnity Co.*, 2013 IL App (1st) 120980, ¶ 16. That procedure, which we summarize below, does not include an evidentiary hearing for claimants. Under the Code, when a liquidation, rehabilitation, or conservation order has been entered against an insurance

company, any person who has a cause of action against an insured of the insurance company has the right to file a claim in the corresponding proceeding. 215 ILCS 5/209(6) (West 2014)). The claim may be allowed by estimation

> "(a) if it may be reasonably[ ] inferred from proof presented upon the claim that the claimant would be able to obtain a judgment upon the cause of action against the insured; and (b) if the person has furnished suitable proof, unless the court for good cause shown shall otherwise direct, that no further valid claims against the insurer arising out of the cause of action other than those already presented can be made, and (c) the total liability of the insurer to all claimants arising out of the same act shall be no greater than its total liability would be were it not in liquidation, rehabilitation, or conservation." *Id.*

¶ 15     A claimant must receive written notice if a claim is denied by the Director of Insurance. *Id.* § 209(11)(a). The claimant may file a written objection with the Director; if the objection does not change the determination, the Director "shall petition the court for a hearing as soon as practicable." *Id.* § 209(11)(b). "It is the court's ultimate responsibility to determine who the creditors of an insolvent insurance carrier are and to fix the amount of their claims." *In re Liquidation of Pine Top Insurance Co.*, 266 Ill. App. 3d 99, 108 (1994).

¶ 16     This court has found that the relevant provisions of the Code do not indicate "any intent on the part of the legislature that an evidentiary hearing must be held before the court approves a contingent claim." *Id.* To be sure, the version of the Code in effect in *Pine Top* did not mention any kind of hearing. See Ill. Rev. Stat. 1991, ch. 73, ¶ 821. The version of the Code that applies here states that a hearing is required if a claimant objects to the Director's decision, but the Code does not state that an evidentiary hearing is required. See 215 ILCS 5/209(11)(b) (West 2014).

Further, the record indicates that the proceedings below fully complied with the Code. In its motion to disallow the Board's claim, the liquidator stated that the Board had been notified that its claim should be disallowed and the Board had objected. The motion also stated that under section 209(11)(b) of the Code (*id.*), the matter was being brought before the court for a hearing. The Board filed a response to the liquidator's motion to disallow the claim, and so had an opportunity to present any evidence and arguments that it wanted the court to consider. Far from summarily disregarding the Board's evidence, as the Board contends, the Board was provided with a hearing where its arguments were thoroughly considered. Indeed, the court's written order states that it heard oral argument and the order discusses the Board's and the liquidator's evidence in detail. The Board does not specifically indicate what an evidentiary hearing could provide that the proceedings below did not. Moreover, as discussed further below, if there were arguments that the court did not consider, it is because the Board forfeited them. The proceedings below fulfilled the Code's requirements, and the Board was not entitled to an evidentiary hearing.

¶ 17                                    B. Standard of Review

¶ 18    Next, we clarify our standard of review. The Board contends that because the circuit court's rulings were based on the same documentary evidence that is before this court, our review is *de novo*. However, the liquidator correctly asserts that we must review the circuit court's decision for an abuse of discretion. See *In re Liquidation of Pine Top Insurance Co.*, 266 Ill. App. 3d at 109 (circuit court did not abuse its discretion when it fixed the value of a claim and found that it could be reasonably inferred that the claimant would have been able to obtain a judgment if the cause of action went to trial). The cases that the Board relies on do not convince us otherwise. Two of those cases—*Spartan Motors, Inc. v. Lube Power, Inc.*, 337 Ill. App. 3d

556, 559-60 (2003), and *Gaidar v. Tippecanoe Distribution Service, Inc.*, 299 Ill. App. 3d 1034, 1039 (1998)—considered the standard of review for a dismissal based on a lack of personal jurisdiction. The Board also cites an unpublished decision: *Casablanca Lofts, LLC v. Blauvise*, 2014 IL App (1st) 132236-U, ¶ 18. Putting aside that like *Spartan Motors, Inc.* and *Gaidar*, *Casablanca Lofts* deals with an entirely different subject, the decision is not precedential and may not be cited. Ill. S. Ct. R. 23(b), (e) (eff. Apr. 1, 2018). The Board tries to avoid this rule by asserting that unpublished decisions may be cited to support a contention of collateral estoppel (Ill. S. Ct. R. 23(e) (eff. Apr. 1, 2018), and one of the Board's arguments on appeal involves collateral estoppel. However, an unpublished decision may be cited for collateral estoppel purposes when a party seeks to use matter from the unpublished decision to establish certain issues or facts in the current case, provided that the elements of collateral estoppel are otherwise met. See *In re Estate of Opalinska*, 2015 IL App (1st) 143407, ¶¶ 9-12 (allowing one party to cite to the opposing party's prior unpublished criminal case to establish facts in the current appeal). The exception does not apply anytime a party argues for collateral estoppel.

¶ 19                    C. Liquidated Damages for Contracts 1A and 1B

¶ 20    We turn to the Board's contention that the circuit court should have allowed the claims for liquidated damages for delayed substantial completion for contracts 1A and 1B, which covered the East End, West End, and Middle/High schools. This issue hinges on when the contracts were substantially complete. According to the Board, the court should have adopted the architect's certifications that Contract 1A was substantially complete on December 8, 2004, and Contract 1B was substantially complete on November 17, 2004.

¶ 21    As support for its desired substantial completion dates, the Board contends that AMICO is collaterally estopped from disputing the 2004 dates based on certain New Jersey rulings. The

liquidator asserts that the Board forfeited the collateral estoppel argument because it did not raise the matter below, but we find that the Board's argument is sufficiently preserved. In its response to the liquidator's motion to disallow the claim, the Board asserted that the liquidator should be estopped from disavowing the architect's determinations of substantial completion because AMICO relied on those determinations in New Jersey.

¶ 22    Turning to the merits, we apply New Jersey law because the local law of the state where the judgment was rendered determines the effect of the judgment on the original claim or cause of action. Restatement (Second) of Conflict of Laws § 95 (1971). For collateral estoppel to bar relitigating an issue, the party asserting collateral estoppel must show that

"(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1009 (N.J. 2006).

¶ 23    The Board asserts that the New Jersey Superior Court found as facts that the schools were substantially completed on the 2004 dates certified by the architect. In support, the Board refers to an October 30, 2014, order that ruled on the parties' motions *in limine* and defined the issues that remained open for trial. The court stated that

"it is uncontradicted that the Board's representative, Architect Vitetta, declared each of the three projects substantially complete (Contract 1A on December 8, 2004; Contract 1B on November 17, 2004 ***). With that declaration, [AMICO]

became entitled to be paid the amounts due under each of the contracts less a fair allowance to the owner to make good any defects."

The same statement was included in the New Jersey court's judgment order after trial.

¶ 24    Taken in context, the statement above indicates that the court was using the architect's dates as placeholders. The issue of whether there was a delay in completing the contracts—which would require the court to determine the exact date of substantial completion—was not decided in New Jersey. The same October 30, 2014, order referred to by the Board stated that "[t]he issue concerning evidence of delay has previously been determined to *not* be an issue to be heard or decided by the Court in this matter." (Emphasis in original.) The operative issue was whether substantial completion was achieved. The court noted that AMICO had moved to preclude the Board from relying on the failure of its architect and construction manager to execute certain AMICO payment applications as a viable and ascertainable defense. AMICO anticipated that the Board intended to rely on the applications to dispute that the full amount of the remaining contract balances was due. The court stated that a relevant principle in the analysis was that "where there is substantial performance of a building contract, even though attended by minor shortcomings, the contract price may be recovered, less a fair allowance to the owner to make good the defects." *Winfield Mutual Housing Corp. v. Middlesex Concrete Products & Excavating Corp.*, 120 A.2d 655, 657 (N.J. Super. Ct. App. Div. 1956). Thus, only the fact of substantial completion mattered, not the exact date of substantial completion.

¶ 25    Further, AMICO was careful in the New Jersey litigation to preserve its contention that the work was substantially complete well before the architect's dates. In the October 30, 2014, order, the court noted that AMICO "contends that the work, by the Board's admission, was completed as of December 8, 2004 (at the latest)." The court added in a footnote that

"[AMICO] contends that the date of completion was much earlier." The court also stated that "[e]ven though [AMICO] asserts that the work was substantially complete at a time prior to [the architect's] recognition of that event, for purposes of this matter and the issues before the Court, it is uncontradicted that all of the work was determined to be substantially complete." The New Jersey court did not decide the date of substantial completion, and the exact date was not essential to the New Jersey judgment. Thus, AMICO is not collaterally estopped to challenge the architect's dates of substantial completion.

¶ 26    The Board next attempts to establish the architect's 2004 dates as conclusive by contending that AMICO is judicially estopped from disputing the completion dates certified by the architect. The liquidator asserts that this argument is forfeited; but as with the Board's collateral estoppel argument, we find the matter sufficiently preserved.

¶ 27    Under the doctrine of judicial estoppel, "a party who assumes a particular position in a legal proceeding is estopped from assuming a contrary position in a subsequent legal proceeding." (Internal quotation marks omitted.) *Barack Ferrazzano Kirschbaum Perlman & Nagelberg v. Loffredi*, 342 Ill. App. 3d 453, 460 (2003). The purpose of the doctrine is to "protect the integrity of the judicial process by prohibiting parties from 'deliberately changing positions' according to the exigencies of the moment." *Seymour v. Collins*, 2015 IL 118432, ¶ 36 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). To invoke judicial estoppel, "[t]he party to be estopped must have (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it." *Id.* ¶ 37. Here, AMICO did not take inconsistent positions in the New Jersey and Illinois proceedings. As noted above, AMICO maintained in New Jersey that the

substantial completion dates were earlier than the dates that the architect certified. Judicial estoppel does not apply.

¶ 28    Thus, despite the Board's arguments to the contrary, the New Jersey court's rulings did not establish the dates of substantial completion. We move on to considering other evidence that was before the circuit court when it determined the date of substantial completion. We begin by summarizing the principles of substantial completion and when liquidated damages are available. The parties agree that New Jersey law applies. "[L]iquidated damages clauses are included in construction contracts as a 'predetermined assessment of compensatory damages for failure to substantially complete the construction project within the contract time.' " *Perini Corp. v. Greate Bay Hotel & Casino, Inc.*, 610 A.2d 364, 374 (N.J. 1992) (quoting Steven M. Siegfried, Introduction to Construction Law § 8.03(d) (1987)), *overruled on other grounds by Tretina Printing, Inc. v. Fitzpatrick & Associates, Inc.*, 640 A.2d 788 (N.J. 1994). Substantial completion occurs when "construction is sufficiently complete…so the owner can occupy or utilize the building." (Internal quotation marks omitted.) *Russo Farms, Inc. v. Vineland Board of Education*, 675 A.2d 1077, 1093 (N.J. 1996). When the building is substantially complete, the building is inhabitable and the only remaining task is the punchlist, which is a final list of small items requiring completion, or finishing, corrective or remedial work. *Id.* Unless otherwise specifically agreed, liquidated damages are not available after substantial completion. *Perini Corp.*, 610 A.2d at 375. But see *id.* at 379 (upholding an arbitration award that awarded consequential damages after substantial completion).

¶ 29    Here, the contract documents are consistent with the principles of substantial completion discussed above. Contracts 1A and 1B state that the date of substantial completion "is the date, certified by the Owner, when construction is sufficiently complete in accordance with the

Contract Documents that the Owner may, if it so elects, occupy and use the Work for the purposes for which it was intended in accordance with Paragraph 9.8.1 of the General Conditions." Paragraph 9.8.1 of the General Conditions provides:

> "Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so the Owner can occupy or utilize the Work for its intended use; provided, however, that as a condition precedent to the Substantial Completion, the Owner has received all certificates of occupancy and any permits, approvals, licenses, and other documents from any governmental authority having jurisdiction thereof necessary for the beneficial occupancy of the portion of the Project to be occupied."

The contracts impose liquidated damages of $500 per day for milestone dates and $1000 per day for substantial completion dates.

¶ 30    The Board urges that we defer to the architect's dates of substantial completion. Per the project manual, when the architect concurred that the work was substantially complete, he was to prepare a Certificate of Substantial Completion. Generally speaking, the architect's role is significant. In the typical construction contract and in the American Institute of Architects documents used here, the architect or other designated design professional has multiple roles, functioning as an agent of the owner, consultant, and arbiter. *Ingrassia Construction Co. v. Vernon Township Board of Education*, 784 A.2d 73, 78 (N.J. Super. Ct. App. Div. 2001). "[T]he architect *** occupies a position of trust and confidence, and *** 'he should act in absolute and entire good faith throughout.' " *Terminal Construction Corp. v. Bergen County Hackensack River Sanitary Sewer District Authority*, 113 A.2d 787, 799 (N.J. 1955) (quoting Am. Inst. of

Architects, The Handbook of Architectural Practice 19 (4th ed. 1943)). When the architect acts under a contract as " 'the official interpreter of its conditions and the judge of its performance' he should 'side neither with the Owner nor with the Contractor' but exercise impartial judgment." *Id.* (quoting Am. Inst. of Architects, *supra*, at 20). An architect's decision "is entitled to considerable weight either by way of a presumption of correctness or by compelling judicial deference." *Ingrassia Construction Co.*, 784 A.2d at 79. However, the architect's decision is not conclusive if he acted in bad faith, fraudulently, or arbitrarily, or if the architect made a gross mistake. See *Terminal Construction Corp.*, 113 A.2d at 799; *Ingrassia Construction Co.*, 784 A.2d at 78.

¶ 31 As noted above, the architect here certified Contract 1A as substantially complete on December 8, 2004, and Contract 1B as substantially complete on November 17, 2004. The circuit court did not rely on the architect's dates, and for good reason. As noted by the circuit court, the Board applied for a state grant from the New Jersey Economic Development Authority (EDA) for Contract 1A. Included in the application was a "Design Consultant Certification Upon Substantial Completion" for the East End and West End Elementary Schools. The certifications were signed under oath by the architect and the Board and were dated April 14 and 15, 2003. The certifications further averred that:

> "A. The essential requirements of the Contracts have been fully performed so that the purpose of the Contracts is accomplished.
>
> B. The Punchlist has been created.
>
> C. There are no important or material omissions or technical defects or deficiencies regarding the School Facilities Project.

D. The temporary certificate of occupancy, continued use or completion has been issued.

E. The School Facilities Project is ready for occupancy in accordance with its intended purpose."

The language of the EDA certification tracks the language of substantial completion in the contracts. Thus, the architect—and the Board, for that matter—at one point declared Contract 1A substantially complete well before the dates that the Board now asserts. This change in position supports the circuit court's finding that the architect acted arbitrarily with regard to the Certificate of Substantial Completion. Further, the architect's arbitrary conduct as to Contract 1A undermines the integrity of the architect's date of substantial completion for Contract 1B. The Board asserts that the requirements for EDA funding were materially different from the requirements for substantial completion in the construction contracts. However, a copy of the EDA grant agreement is not in the record, and without it, we cannot evaluate whether the Board's assertion is correct. Based on the record before us, we agree with the circuit court's decision not to defer to the architect's dates of substantial completion.

¶ 32    Without a reliable architect's certificate of substantial completion, the circuit court properly referred to temporary certificates of occupancy (TCOs), which can be an appropriate benchmark for substantial completion. See *Town of Kearny v. Brandt*, 67 A.3d 601, 612-13 (N.J. 2013) (where architect's certificate of substantial completion was deficient, TCO marked substantial completion where it indicated that the building was sufficiently complete so it could be occupied and used). Here, TCOs were issued for the Contract 1A and 1B schools in September 2002. Other evidence further supports that the TCOs marked substantial completion. As the circuit court noted, the Board's superintendent stated that students were allowed to

occupy the East End, West End, and Middle/High Schools in 2002-03. The superintendent also stated that the elementary schools were available for partial use under TCOs, starting in September 2002, and the Middle/High School was available for partial use in early 2003. Because the Board could use the buildings for teaching children, it was not an abuse of discretion for the court to find that the buildings were substantially complete in September 2002 under the TCOs.

¶ 33     The Board notes that the TCOs state that handrails still had to be completed, but we are not persuaded that handrails were more than a punchlist item. The Board also cites to its expert reports and other documents in the record, which it contends are extensive evidence showing that, when the TCOs issued, significant work remained incomplete and major portions of the schools were unusable or defective. The Board further maintains that the use of the schools in 2002 should be classified as "partial occupancy," which per the General Conditions "may commence whether or not the portion of substantially complete." However, the circuit court's written order indicates that the court considered the evidence of allegedly incomplete work that the Board points to on appeal. We see no error in the court's thorough analysis and its finding that there was no delay. The circuit court's conclusion was not unreasonable, and so the court did not abuse its discretion in denying liquidated damages for contracts 1A and 1B. See *Sentry Insurance v. Continental Casualty Co.*, 2017 IL App (1st) 161785, ¶ 32 (decision deemed an abuse of discretion only if the decision is unreasonable and arbitrary or where no reasonable person would take the view adopted by the circuit court).

¶ 34     Although the circuit court did not exclusively rely on the TCOs, the Board tries to undermine the court's reliance on TCOs through other avenues. The Board asserts that section 9.8.1 of the General Conditions requires a final occupancy certificate for substantial completion.

Section 9.8.1 states that as a condition precedent to substantial completion, the owner must receive all certificates of occupancy and other documents "necessary for the beneficial occupancy of the portion of the Project to be occupied." Section 9.8.1 of the General Conditions does not change our conclusion that TCOs could mark substantial completion. The TCOs were sufficient for beneficial occupancy, as the Board was able to use the schools when the TCOs were issued. Further, the New Jersey Administrative Code provides that a TCO will issue "when the work covered by the permit shall have been substantially completed." N.J. Admin. Code § 5:23-2.23(g) (2018). Thus, substantial completion is a prerequisite for a TCO and it was not an error for the circuit court to refer to the TCOs in support of its conclusion.

¶ 35    The Board further contends that the circuit court contradicted a ruling by the New Jersey Superior Court that the TCOs did not conclusively establish substantial completion. The Board asserts that under the full faith and credit clause and principles of comity, the circuit court was obliged to enforce all of the New Jersey Superior Court's rulings.

¶ 36    Again, the circuit court did not find that TCOs automatically indicate substantial completion. The circuit court considered the evidence presented, which included the TCOs, expert reports, and other documents. That aside, the Board misconstrues the New Jersey ruling at issue. The Board here refers to an order entered on April 6, 2010, in New Jersey that denied a motion for partial summary judgment, before the Board's counterclaims were dismissed. The court noted that the parties disagreed about the effect of the TCOs. AMICO had raised the issue of the EDA certifications to argue that the Board was estopped from disputing substantial completion. The court also referenced the "Takeover Agreements" that were entered into after AMICO took responsibility for the project, and which required AMICO to substantially complete the remaining work. The court found that the conflict between the EDA certifications

and the Takeover Agreements "presents a genuine issue of material fact that cannot be decided on summary judgment." The court added that "a question of fact exists as to the completion status of the 1A and 1B schools" when AMICO took over the contracts. Thus, far from ruling that the TCOs did not establish substantial completion, the New Jersey court found that substantial completion should be decided at trial. There was no ruling on the TCOs for the circuit court of Cook County to enforce.

¶ 37    As for the Takeover Agreements themselves, the Board asserts—as it did in New Jersey—that they indicate the schools were substantially complete in 2004. AMICO signed the Takeover Agreements on May 19, 2004, agreeing to "arrange for the substantial completion of the Work no later than July 15, 2004." As noted above, the architect's certified substantial completion dates were in November and December 2004. According to the Board, the fact that the architect's dates so closely approximate the completion date promised by AMICO in the Takeover Agreements shows that the architect's dates were reasonable and consistent with the parties' intentions.

¶ 38    In light of all the evidence, the Board's reliance on the substantial completion language in the Takeover Agreements does not undermine the circuit court's conclusion that the projects were substantially complete in September 2002. As the liquidator notes, the Takeover Agreements contained a paragraph, titled "Reserve Surety and D&D Rights and Claims," that provided:

> "Except as specifically provided in this Takeover Agreement, all rights, remedies, claims or defenses which D&D and/or Surety have against Owner are hereby expressly reserved ***. Nothing in this Takeover Agreement is intended, or shall

be construed, as a waiver of any rights, remedies, claims or defenses of Surety or

D&D against the Owner."

The Takeover Agreements further state, in a paragraph titled "No Admissions":

"The making of this Takeover Agreement is not intended, and shall not be

construed, as (a) an admission of any issue of law or fact or an admission of

liability on the part of either party hereto, or of D&D or (b) a waiver by Surety of

its or D&D's rights, if any, to contest the validity or propriety of the termination

of the Contract by Owner or any remedies, claims or defenses with respect to such

rights."

¶ 39    With those two paragraphs in mind, the Takeover Agreement could be read to preserve

AMICO's contentions that substantial completion was achieved before D&D was terminated in

2003. The Takeover Agreements, alone, do not cast doubt on the circuit court's decision.

Further, it is the circuit court's responsibility to determine who the creditors of an insolvent

insurance carrier are. *In re Liquidation of Pine Top Insurance Co.*, 266 Ill. App. 3d at 108. The

circuit court carefully examined the "proof presented upon the claim" (215 ILCS 5/209(6) (West

2014))—which included many documents in addition to the Takeover Agreements—and

determined that contracts 1A and 1B were substantially complete in September 2002. From the

documents in the record, we find that the court did not abuse its discretion in denying liquidated

damages for contracts 1A and 1B.

¶ 40                    D. Liquidated Damages for Contract 1C

¶ 41    Next, the Board contends that the circuit court erroneously disallowed claims for

liquidated damages related to Contract 1C, which covered the Somerset School. The Board states

that this project involved erecting two new structures and renovating the existing school. The

project was supposed to be substantially complete by September 26, 2002, but a TCO was issued on June 3, 2004, and the architect certified the building as substantially complete on August 17, 2004. The Board contends that the circuit court incorrectly and summarily found that all delays were caused by design defects for which the Board was responsible. The Board further contends that the circuit court improperly relied on expert evidence that had been excluded by the New Jersey Superior Court.

¶ 42    We first address whether the circuit court relied on evidence that had been excluded in New Jersey. As background, on January 9, 2009, the New Jersey Superior Court entered a written order that stated that AMICO's expert report did not meet AMICO's discovery obligations for expert testimony. The court allowed AMICO to file a supplemental report, which could not include new conclusions or opinions. After AMICO filed its supplemental report, the Board moved to bar it because it contained new conclusions and opinions. Following a hearing on the Board's motion, the court orally ruled that

> "[AMICO's] expert will not be permitted to testify at trial with respect to the opinions that unsound structural condition of the chimney discovered after demolition began showing deteriorated masonry and mortar, and discovery of a cold joint that was not shown on the architectural design, discovery of buried foundations, and an underground tunnel, and delays in steel installation near the chimney were the cause of delays ***.
>
> The fact that I'm barring [the expert] from testifying in that way during [AMICO's] case does not mean that the information [the expert] has provided to [AMICO] now may not be used in cross-examination of [the Board's] expert. I'm

not barring the information from being used by [AMICO], barring the affirmative presentation of that evidence in [AMICO's] case in chief.

And just so there's no confusion, when I say case in chief, I don't mean that they can do it in rebuttal. Even rebuttal testimony requires that discovery be provided. And since discovery of these opinions was not trying to survive it, [AMICO] will be barred from presenting these opinions at the trial."

The court further stated that the expert's opinion about why requests for information related to structural steel caused the delay was admissible in evidence.

¶ 43     In the Illinois proceeding, the documents appended to the liquidator's motion to disallow the Board's claim included (1) part of the supplemental expert report submitted in New Jersey and (2) a certification from Louis Baldassarre, whose firm helped AMICO investigate the Board's claims and served as the authorized agent for AMICO in connection with the Takeover Agreements. The Board states that the liquidator's appended supplemental expert report was excluded in New Jersey. The Board further asserts that the Baldassarre certification contained precisely the opinions that the New Jersey court excluded: that the school's chimney-related construction delays were caused by deteriorated masonry and mortar and the discovery of a cold joint between the chimney and adjoining structures.

¶ 44     The Board mischaracterizes the version of the supplemental expert report that the liquidator submitted in Illinois. Only two sections of the report were included—a section titled "Structural Steel Delays" and a section titled "Conclusion." The section on the structural steel delays indicated that delays were caused by large numbers of requests for information about structural steel. The New Jersey court found that this opinion was admissible. As for the conclusion section, it stated in part that the supplemental report

"has explained the facts regarding the chimney issue; the discovery of the deterioration of the chimney and its lack of structural integrity that was overlooked by the designer; the discovery of underground tunnels that required remedial excavation and backfill program[;] and the discovery of a foundation that required underpinning, all of this work that was beyond the scope of the contract."

The report added that, as a result of discovered conditions and incomplete design drawings, "the delays incurred by D&D on the project with regard to the chimney and structural steel impacted D&D's ability to meet the roof milestone date." The conclusion section mentioned chimney-related issues, but did not go into detail.

¶ 45    The Baldassarre certification noted that an investigation revealed that D&D discovered that the existing masonry of the chimney was deteriorating. Baldassarre referred to a field observation report with a handwritten note stating that "you can literally push clusters of brick with your hands. There is no bonding with the mortar at all. (It is basically dust.)" Baldassarre continued that the "crumbling mortar problem" was compounded by the fact that Vitetta's (the architect's) drawings depicted the existing wall and chimney to be one continuous, integrated wall, when in reality the chimney was originally constructed as a freestanding structure, which was not interlocked to the existing masonry wall. Baldassarre stated that this condition is referred to as a "cold joint." Baldassarre included an enlarged view of the chimney and exterior walls from a demolition drawing. Baldassarre also included photographs that were turned over as part of Baldassarre's investigation and one of the architect's supplemental instructions, "which appears to be Vitetta's first attempt to address the significant structural concerns raised by

D&D." Baldassarre further referred to construction change directives, project meeting minutes, and requests for information.

¶ 46    We agree that Baldassarre's certification discussed the deteriorating chimney and discovery of a cold joint. Further, there are parts of the certification that verge on opinion. At one point, Baldassarre stated, "While I agree with [the Board's expert] that the demolition of the existing chimney caused extensive delays at the Somerset School, [the Board's expert] is incorrect in assigning responsibility to D&D because, as confirmed by the Project record, the design failures of Vitetta caused the delay." However, the vast majority of Baldassarre's certification consisted of his personal knowledge of facts and documents, rather than opinions. See Black's Law Dictionary 1486 (7th ed. 1999) (opinion testimony is "[t]estimony based on one's belief or idea rather than on direct knowledge of the facts at issue"). Baldassarre recounted the history of the chimney issue and what various parties did in response to challenges encountered. The New Jersey court allowed AMICO to use the information from the supplemental expert report and only excluded the opinions that the chimney's condition and the discovery of the cold joint caused the delays. The bulk of Baldassarre's certification is consistent with the New Jersey court's order.

¶ 47    Moreover, the circuit court's written order does not indicate that it relied on any opinions in the Baldassarre certification. The order also does not reference the supplemental expert report's comment about chimney deterioration and tunnels. The court recalled facts and documents that were referenced in the certification and concluded that "any delay occasioned by the chimney demolition was directly caused by Vitetta and the Board." The court did not rely on excluded opinion testimony.

¶ 48 The Board further asserts that the circuit court erroneously disregarded the Board's expert evidence, which concluded that D&D was responsible for the delays. The liquidator responds that the Board forfeited the argument that D&D was responsible for certain delays. In its response to the liquidator's motion to disallow the claim, the Board contended generally that D&D caused project delays, without stating the details that appear in its appellate brief. Forfeiture concerns aside, the Board's argument amounts to a request that we credit the Board's expert evidence over the evidence submitted by the liquidator. We decline to do so. The court's order explicitly refers to the Board's expert report, which assigned responsibility for the Somerset School delays to D&D. After examining the evidence, the circuit court determined that Vitetta and the Board caused the delay because they did not understand the existing condition of the chimney area. In reaching this conclusion, the circuit court did not act arbitrarily, exceed the bounds of reason, or adopt a position that no reasonable person would take. See *The Private Bank v. Silver Cross Hospital & Medical Centers*, 2017 IL App (1st) 161863, ¶ 60 (stating when a trial court abuses its discretion). Thus, the circuit court did not abuse its discretion in denying the claim for liquidated damages for the Somerset School.

¶ 49 In reaching this conclusion, we do not address the Board's contention that competent expert testimony is required to prove that design defects caused the Somerset School delays. The liquidator correctly notes that the Board did not raise this argument below and so it is forfeited. See *Bowman v. Chicago Park District*, 2014 IL App (1st) 132122, ¶ 59 (issues not raised in the trial court are forfeited and may not be considered for the first time on appeal).

¶ 50                                    E. Burden of Proof

¶ 51 Next, the Board contends that, on remand, the circuit court should apply the proof burdens for recovering liquidated damages that are established by New Jersey law and were

applied by the New Jersey Superior Court. Here, the Board refers to an order entered in New Jersey on August 24, 2010, that addressed, among other items, the Board's motion *in limine* to delineate the parties' burdens of proof at trial. (Again, the Board's counterclaim had not yet been dismissed.) The court stated that the parties' burdens of proof as to liquidated damages was as follows:

> "(1) [The Board] must establish that valid liquidated damages clauses are in the contracts; then, (2) it must show there were delays to the completion of the schools beyond the substantial completion (or beneficial occupancy) and milestone dates; once [the Board] demonstrates that, [AMICO], to avoid application of the liquidated damages clauses, must prove their defenses, including but not limited to: (1) demonstrating that beneficial occupancy or substantial completion was achieved; (2) that there were contractually acceptable excuses for the delays; and/or (3) D&D's improper termination."

The Board contends that, contrary to the New Jersey court's ruling, the circuit court erroneously ruled that the Board bore all proof burdens.

¶ 52    The point of the Board's argument is hard to discern. The argument seems to depend on the Board's success in its other arguments, but the Board has not prevailed in those arguments. To the extent that the Board asserts that the circuit court applied the wrong burden of proof, we disagree. We reiterate that the proceeding here was a liquidation proceeding under the Code. The circuit court was not required to hold the trial on the Board's counterclaims that was initially set to occur in New Jersey, but did not occur due to the Illinois liquidation proceeding. Further, the court properly required the Board to prove that it was entitled to its claims. In its written order, the court stated that

"the Board has the ultimate burden of showing that it could be reasonably inferred from the proof presented on the claim that the Board would be able to obtain a judgment upon the counterclaim that was originally before the New Jersey Superior Court. It is not the Liquidator's burden to show that the claim should be disallowed even though the Liquidator is the movant."

The court's statement is entirely consistent with the Code. Once a liquidation order is entered against an insurance carrier, a person with a cause of action against one of the insureds under a liability policy may file a claim against the carrier in the liquidation proceeding, even if the liability of the insured has not yet been determined by judgment. *In re Liquidation of Pine Top Insurance Co.*, 266 Ill. App. 3d at 105. The claim may be allowed by estimation if it may be reasonably inferred from proof presented on the claim that the claimant would be able to obtain a judgment on the cause of action against the insured. 215 ILCS 5/209(6) (West 2014). The "proof presented on the claim" is a statement signed by or on behalf of the claimant that includes, among other elements, "the particulars of the claim" and "that the sum is justly owing and that there is no setoff, counterclaim, or defense to the claim." *Id.* § 209(1)(a)(i), (iv). By the Code's language, it is the claimant's burden to justify that it is owed money. Further, the court's order indicates that the court weighed the Board's claims against the evidence that substantial completion was achieved in September 2002 or, in the case of the Somerset School, that the delays were caused by architect Vitetta and the Board. We find no error in the court's allocation of the burden of proof.

¶ 53                                    F. The *Smith* Litigation

¶ 54    As another general issue, the Board contends that collateral estoppel applies to certain findings about fault from another case in the New Jersey Superior Court, *P.J. Smith Electrical*

*Contractors, Inc. v. North Plainfield Board of Education*, SOM-L-23-05 (N.J. Super. Ct. Law Div. 2011). That case involved the project's electrical contractor, who filed a complaint in 2005 against the Board that asserted that the project's delays caused it to incur various costs and expenses. According to the Board, the court in *P.J. Smith* found that "the trial evidence showed that although D&D's failure to provide an acceptable baseline schedule was disruptive, the more severe cause of the delays on the project was D&D's failure to provide adequate manpower and to perform the work as a general contractor." The Board states that the factual findings were affirmed on appeal. See *P.J. Smith Electrical Contractors, Inc. v. North Plainfield Board of Education*, No. A-1853-11T1, 2013 WL 5337041 (N.J. Super. Ct. App. Div. 2013). The Board asserts that even though AMICO was dismissed from the *Smith* litigation before trial, AMICO is collaterally estopped to dispute the court's factual findings because AMICO had a vested interest in the trial, was in privity with D&D, could have requested to participate in the trial, and actively participated in the appeal.

¶ 55    Contrary to the Board's position, AMICO's dismissal is fatal to the Board's collateral estoppel argument. One requirement for collateral estoppel to apply is that the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding. *Olivieri*, 897 A.2d at 1009. As part of the *Smith* litigation, the Board had filed a third-party complaint that sought indemnification from D&D and AMICO. *P.J. Smith Electrical Contractors, Inc.*, 2013 WL 5337041 at *2. The third-party complaint was dismissed on July 16, 2009, and the various orders that denied the Board indemnification from AMICO were later affirmed on appeal. *Id.* at *6. The Board states that AMICO was in privity with D&D, but neither D&D nor AMICO was a party in *Smith*. The third-party complaint that sought to involve D&D and AMICO was dismissed. Thus, collateral estoppel does not apply.

¶ 56        G. Liquidated Damages for Missed Milestones

¶ 57    Next, the Board contends that the circuit court should have allowed the Board's claims for liquidated damages related to missed milestones. The Board argues that, in the circuit court proceedings, the Board proffered comprehensive expert opinions concluding that D&D failed to meet 16 separate milestones, determining the dates when those milestones were met, and calculating the associated liquidated damages. According to the Board, the circuit court summarily disregarded or rejected all of the Board's expert opinions and only discussed 6 of the 16 claims. In its brief, the Board details the alleged missed milestones.

¶ 58    The liquidator contends, and we agree, that the Board forfeited the arguments related to missed milestones. We summarize how missed milestones were raised below. In its motion to disallow the Board's claim, the liquidator identified the following missed milestones for which the Board sought liquidated damages: (1) the tennis courts at the East End School, (2) the T-ball field at the East End School, (3) the roof milestones at the East End and West End Schools, (4) the staff parking lot at the Middle/High School, (5) the electric field milestone at the Middle/High School, and (6) the roof milestone at the Middle/High School. The liquidator also explained why liquidated damages for those milestones should be denied. In its response to the liquidator's motion, the Board stated that it sought liquidated damages related to the contractor's failure to meet milestone completion deadlines. The Board noted that the liquidator had proffered the Board's expert reports and stated that "[i]n the New Jersey Action, the Board presented extensive expert opinion establishing the dates when the contractor actually completed the milestone work and calculating the associated liquidated damages." Further, the Board asserted that the New Jersey court ruled that the liquidated damages clauses and amounts are reasonable and enforceable, both as to the substantial completion and milestone completion dates. That is

the extent of the Board's discussion of missed milestones in its response to the liquidator's motion.

¶ 59    In its written order, the circuit court discussed the six milestones that were identified in the liquidator's motion. It is true that the circuit court did not mention the other milestones that the Board now discusses on appeal, but the court had no reason to do so. The Board neither contested the liquidator's arguments about the six milestones it identified nor complained that there were more milestones at issue. Further, other than noting that the Board's expert report was in the record, the Board did not present any arguments about recovering for individual milestones. The Board only maintained that the liquidated damages clauses were reasonable and enforceable. The Board cannot now, on appeal, argue that it should recover for individual milestones when those arguments were never presented to the circuit court. See *Rodriguez v. Frankie's Beef/Pasta & Catering*, 2012 IL App (1st) 113155, ¶ 23 (plaintiff forfeited claim on review where particular issue was not brought before the trial court); *Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113, 127 (2010) (a reviewing court will not consider arguments not presented to the trial court). The Board forfeited its argument that it is entitled to liquidated damages for missed milestones.

¶ 60                                    H. Actual Damages

¶ 61    Lastly, the Board contends that it is entitled to recover both liquidated and actual damages. The Board argues that the contracts' cumulative rights provision allows the Board to recover both liquidated and actual damages for the delays caused by the construction contractor.

¶ 62    The interpretation of a contract is subject to *de novo* review. *Kieffer v. Best Buy*, 14 A.3d 737, 742 (N.J. 2011). As noted above, the parties' contracts include a liquidated damages clause, which states that because the exact amount of damages will be extremely difficult to ascertain,

the parties agree that as a reasonable pre-estimate of damages that the Board would incur for delayed completion, liquidated damages are set at $500 per day for milestone dates and $1000 per day for substantial completion dates.

¶ 63    New Jersey courts have found that an owner may not recover actual damages when the contract has a liquidated damages clause. In *Board of Education of the Borough of Fair Lawn v. Fair Lawn Plaza Taxi, Inc.*, 150 A.2d 793, 795 (N.J. Super. Ct. App. Div. 1959), the court considered whether, under a statute controlling transportation contracts, a forfeited deposit was a school district's sole remedy for a transportation company's refusal to execute a contract. The court construed the forfeited deposit as liquidated damages and stated that "there is no justification for the recovery of damages in addition thereto." *Id.* at 799. Later, in *Monsen Engineering Co. v. Tami-Githens, Inc.*, 530 A.2d 313, 316 (N.J. Super. Ct. App. Div. 1987), the court considered whether an owner should be allowed to prove actual damages where a liquidated damages clause was in the contract. The court stated that where "the fixed sum is a reasonable forecast of just compensation that is incapable of or difficult to assess accurately, liquidated damage clauses are both enforceable and favored in the law." *Id.* at 318. Further, liquidated damage clauses are judged as of the time of making the contract and are not defeated by proof that the damages suffered are shown to be more or less than the damages contracted for. *Id.* Ultimately, the owner was limited to liquidated damages. *Id.* at 319. The court added that it saw "no impediment to a contract which could have provided the injured party with the alternative remedies of liquidated damages or any greater actual damages warranted by the proofs," but such a provision was not included in the contract, and the court enforced the agreement as written. *Id.* at 319 n.6.

¶ 64    Here, drawing on the possibility stated in *Monsen* that contracts could provide for actual damages, the Board contends that the contracts' cumulative rights provision allows recovery of both liquidated and actual damages. That provision of the contracts is titled "Rights and Remedies" and states:

> "Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law."

¶ 65    The Board further cites *Ingrassia Construction Co.*, 784 A.2d at 80-81, which involved an identical provision, but does not support the Board's argument. In *Ingrassia*, the court stated that the provision "expressly preserved common-law remedies." *Id.* There is no common-law right to recover actual damages in addition to liquidated damages. Thus, the cumulative rights provision does not preserve the right to recover actual damages. When the terms of a contract are clear, a court must enforce it as written and not make a better contract for either of the parties. *Cypress Point Condominium Ass'n v. Adria Towers, L.L.C.*, 143 A.3d 273, 280 (N.J. 2016). The contracts' terms only provide for liquidated damages, and the Board has not persuaded us otherwise.

¶ 66                              III. CONCLUSION

¶ 67    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 68    Affirmed.